Sigmund **DIAMOND**, Plaintiff,

v.

**FEDERAL BUREAU OF INVESTIGATION, William Webster, Director, Federal Bureau of Investigation, United States Department of Justice, Griffin Bell, Attorney General of the United States, United States Department of State, and Cyrus Vance, Secretary of State, Defendants.**

No. 79 Civ. 3770 (RLC).

United States District Court,
S. D. New York.

Aug. 5, 1981.

See also 487 F.Supp. 774.

White & Case, Stephen M. Diamond, New York City, for plaintiff; Dorothea W. Regal, New York City, of counsel.

John S. Martin, Jr., U. S. Atty. for the Southern District of New York, New York City, for defendants; Jane E. Bloom, Asst. U. S. Atty., New York City, of counsel.

## OPINION

ROBERT L. CARTER, District Judge.

This is an action pursuant to the Freedom of Information Act ("Act" or "FOIA"), 5 U.S.C. § 552 (1976), and the Privacy Act, 5 U.S.C. § 552a (1976), to compel disclosure of materials in possession of the Federal Bureau of Investigation ("FBI") and the United States Department of State. The plaintiff, Sigmund Diamond, a professor of Sociology and History at Columbia University, has been seeking documents relating to government surveillance of academicians, including himself, during the McCarthy era. Prior to commencing this suit Diamond had obtained, by requests under the Act, 638 pages of documents without redaction and 382 with redaction. An additional 118 pages had been withheld in their entirety. The redacted and withheld documents are the subject of this suit.

In July, 1979, more than two years after he began his administrative attempts to secure the documents, plaintiff filed this action and a concomitant motion to require detailed justification, itemization and indexing of the withholdings and deletions—a so-called *Vaughn* motion, *see Vaughn v. Rosen*, 484 F.2d 820, 826–28 (D.C.Cir.1973), *cert. denied*, 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1974). Diamond's motion was granted in part, and the defendants were ordered to provide individualized statements of and justifications for exemptions claimed under the FOIA and the Privacy Act. Defendants were also ordered to provide a descriptive index of withheld documents and explanations of the numbers, abbreviations, codes, handwritten notations and other markings on the released documents. *Diamond v. FBI*, 487 F.Supp. 774 (S.D.N.Y.1979) (Carter, J.).

Several months later the government produced an index of the claimed exemptions, along with affidavits from various FBI special agents and State Department officials, describing the material in question and the administrative procedures followed in evaluating the material. The index and affidavits related each of the deletions to one or more of the following exemptions: § 552(b)(1), (b)(6), (b)(7)(C), and (b)(7)(D) of the FOIA; and § 552a(k)(5) of the Privacy Act. Following this submission the government moved for summary judgment. Diamond maintains that defendants have not adequately complied with the court's order of October, 1979, and moves for limited discovery, *in camera* review of the documents withheld or redacted, a waiver of charges related to the reproduction of the documents pursuant to § 552(a)(4)(A), and for attorney's fees. *Id.*, § 552(a)(4)(E).

The claims of exemption will be considered in turn, but one preliminary matter must be disposed of first. The government argues that Griffin Bell, William Webster and Cyrus Vance should be dropped as defendants in this action. They are named as the Attorney General and the heads of their government units, the FBI, and the Department of State, respectively. While Bell and Vance no longer occupy their respective positions and should be substituted appropriately, the government's motion charges that, even in their official capacities, they are not proper party defendants, for jurisdiction under the FOIA and the Privacy Act is limited to enjoining *agencies* from withholding records and ordering same to produce records improperly withheld. *See* 5 U.S.C. § 552(a)(4)(B); 5 U.S.C. § 552a(a)(1).

The government's motion is denied. As the court stated in *Hamlin v. Kelley*, 433 F.Supp. 180, 181 (N.D.Ill.1977):

[S]o many cases under this Statute have been sustained against heads of departments, units and agencies that their susceptibility to suit is well established.

*See also Lopez Pacheco v. FBI*, 470 F.Supp. 1091, 1095 n.2 (D.P.R.1979); *Nemetz v. Dept. of Treasury*, 446 F.Supp. 102, 106 (N.D.Ill. 1978). Moreover, we note that in the most recent Second Circuit case involving FOIA exemptions, *Keeney v. FBI et al.*, 630 F.2d 114 (2d Cir. 1980), Clarence Kelley, Director of the FBI, and Edward Levi, Attorney General, were retained as defendants.

### Exemption (b)(1)

Exemption (b)(1) protects against disclosure of matters that are

(A) specifically authorized under criteria established by an Executive Order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified pursuant to such Executive Order.

5 U.S.C. § 552(b)(1) (1976). Documents are properly withheld from disclosure pursuant to this exemption if "the President has determined by Executive Order that particular documents are to be kept secret." *EPA v. Mink*, 410 U.S. 73, 82, 93 S.Ct. 827, 833, 35 L.Ed.2d 119 (1973). Citing this provision the government has withheld or made deletions in 42 documents. Special agent Busching's affidavit asserts that such documents were properly classified in accordance with Executive Order ("E.O.") 12065, 43 Fed.Reg. 28491, and meet the classification criteria set forth therein.[1] Plaintiff does not dispute that proper procedures were followed. At issue, however, is whether the withheld items meet the classification criteria.

Judicial review of the agency's classification decisions is to be taken *de novo*, and the burden is on the government to justify its action. 5 U.S.C. § 552(a)(4)(B) (1976). This exemption, like all exemptions under FOIA, should not "obscure the basic policy that disclosure, not secrecy, is the dominant policy of the Act." *Dept. of Air Force v. Rose*, 425 U.S. 352, 361, 96 S.Ct. 1592, 1599, 48 L.Ed.2d 11 (1976). The exemption, therefore, is to be construed narrowly. *Ray v. Turner*, 587 F.2d 1187, 1200 (D.C.Cir.1978) (Wright, J. concurring). The government meets its burden if its affidavits establish with reasonable specificity the nature of the documents at issue and the justification for nondisclosure, and if the description shows that the information withheld or excised logically falls within the claimed exemption. *Ray v. Turner, supra,* 587 F.2d at 1194–95; *Weissman v. CIA*, 565 F.2d 692, 697 (D.C.Cir.1977).

In his affidavit accompanying the documents, special agent Busching explains the application of the executive order to the documents. E.O. 12065 contains procedural and substantive requirements for the classifications and requires that classified documents concern a specified category of information related to national security, including

(b) government information; (c) intelligence activities, sources or methods; (d) foreign relations or foreign activities of the United States.

E.O. 12065, 1–301(b)–(d). Busching affirms that, as an intelligence declassification authority, he has examined the withheld documents. His affidavit relates the withheld materials to secret intelligence sources, secret intelligence activities or methods, se-

---

1. 43 Fed.Reg. 28949 (June 28, 1978). The order provides, in pertinent part:

 1–301 Information may not be considered for classification unless it concerns:

 \* \* \* \* \* \*

 (b) foreign government information;
 (c) intelligence activities, sources or methods;
 (d) foreign relations or foreign activities of the United States

 \* \* \* \* \* \*

 1–302 Even though information is determined to concern one or more of the criteria in Sec. 1–301, it may not be classified unless an original classification authority determines that its unauthorized disclosure reasonably could be expected to cause at least identifiable damage to the national security.

cret foreign relations matters or activities, or secret intelligence information provided to the United States with the understanding that the information be kept in confidence.

 In evaluating the government's refusal to disclose, the court must "accord substantial weight to an agency's affidavit concerning the details of the classified status of the disputed record." S.Rep.No.93–1200, 93rd Cong. 2d Sess. 12 (1974), *U.S. Code Cong. & Admin.News* 6267, 6290 (1974); *Weissman v. CIA, supra* at 697 n.10. Careful consideration of defendants' affidavits and exhibits shows that the government has met its burden with respect to those items related to confidential foreign sources and other foreign relations matters, 1–301(b) and (d). The government has made limited use of these grounds, citing 1–301(b) on six occasions and 1–301(d) on five. Disclosure of this information must be presumed to cause at least identifiable damage to the national security, E.O. 12065, 1–303,[2] and the Busching Affidavit asserts that, for each of these, disclosure could reasonably be expected to cause identifiable, or, in the case of two items, serious damage to national security.[3] Busching's affidavit is sufficiently detailed to establish that each item not disclosed in accordance with 1–301(b) and (d) logically falls into the category asserted. Other courts have held affidavits no more detailed than Busching's sufficient to justify the exemptions, *e.g. Terkel v. Kelly*, 599 F.2d 214 (7th Cir. 1979), *cert. denied*, 444 U.S. 1013, 100 S.Ct. 662, 62 L.Ed.2d 642 (1980); *Bell v. United States*, 563 F.2d 484 (1st Cir. 1977), and there is no reason to deviate from that norm in this case.

Plaintiff has not specifically challenged the bona fides of the government's assertions. As will be discussed, *infra*, plaintiff is generally cynical about the government's deleting documents for national security reasons, but he has raised no specific challenge to the particular documents exempted under 1–301(b) and (d). Accordingly, summary judgment is granted with respect to these eleven documents.

Plaintiff's challenge to the government's withholdings pursuant to 1–301(c) are more specific, and his grounds for skepticism more compelling. In effect, he argues that the government has sought to exempt material that could not possibly endanger national security, solely because release of that information is thought to lead to the disclosure of some intelligence source. The breadth of the government's use of 1–301(c), he contends, indicates that all the deletions should be examined *in camera* by the court.

 The Act has authorized *in camera* inspection of withheld documents in the discretion of the court. 5 U.S.C. § 552(a)(4)(B). Such discretion is to be exercised with restraint, particularly where the government has made a plausible case for exemption. *Lead Industries Assn. v. Occup. S. & H. Ad.*, 610 F.2d 70, 87 (2d Cir. 1979); *Cliff v. Internal Rev. Serv.*, 496 F.Supp. 568, 572 n.9 (S.D.N.Y.1980) (Carter, J.). However, where redactions are inadequately described and insufficiently substantiated, *in camera* inspection is appropriate. *Ray v. Turner, supra*, 587 F.2d at 1194–95; *Lamont v. Dept. of Justice*, 475 F.Supp. 761, 770–73 (S.D.N.Y.1979) (Weinfeld, J.).

 For documents withheld under 1–301(c), as for those exempted under 1–301(b) and (d), the Busching Affidavit asserts that disclosure of this information could reasonably be expected to cause identifiable damage to security. The typical justification for non-disclosure under 1–301(c) is that "the portions [excised] contain a singular identifier for the intelligence

---

**2.** 1–303 provides: "Unauthorized disclosure of foreign government information or the identity of a confidential foreign source is presumed to cause at least identifiable damage to the national security."

**3.** The Busching Affidavit was filed on February 13, 1980. Two months later the government filed affidavits by agents Strong and Smith stating that, after review, certain previously classified items were deemed releasable; such items were attached to the Smith Affidavit.

source."[4] However, in virtually every instance, substantially more has been excluded than just the singular identifier, an expansiveness supposedly justified because

> Due to the uniqueness of the information, a more detailed description of the withheld classified portions of this document would identify the source and could reasonably be expected to result in identifiable damage as explained ... above.

Busching Affidavit, p. 11. But this "explanation" is recited verbatim thirty-two times for exemptions claimed under 1–301(c), to justify withholding as much as four consecutive pages of material. No reason, other than the alleged uniqueness of the information, is given why each exempted document or passage, other than the singular identifier itself, would disclose intelligence sources. Moreover, why all of the substantial redactions might identify sources, other than the bald assertion that this is so, is not explained. "In sum, the government's reasons, when carefully compared with the pattern of non-disclosure, suggest that [defendants] may have withheld segregable non-exempt material," *Lamont v. Dept. of Justice, supra,* 475 F.Supp. 761, 771, when these documents were classified under E.O. 12065, and certain of them must be examined *in camera.*

Most of plaintiff's challenge to the government's use of the (b)(1) exemption is based on his cynicism that these materials, many of which are more than thirty years old, could be presumed to involve national security. For example, he questions withholding the "travel plans of an intelligence source" (Document # 32) or documents concerning "the organization of the Communist Party of New England" ( # 139) on the grounds that disclosing such items would not likely endanger national security. Plaintiff's argument on this score is misplaced. First, the court need not "test the expertise of the agency," *Weissman v. Central Intelligence Agency, supra* at 697, in evaluating the exemption, for the court will not attempt to "substitute its judgment for the agency's as to the harm which disclosure would cause," *Ferry v. Central Intelligence Agency,* 458 F.Supp. 664, 667 (S.D.N.Y.1978) (Bonsal, J.). Second, it is inaccurate to construe the government as contending that the documents themselves would jeopardize national security if released. Rather, the government avers that their release would reveal the identity of an intelligence source, and exposing the source "reasonably could be expected to cause at least identifiable damage to national security." E.O. 12065, 1–302; Busching Affidavit ¶¶ 4(A)(1) and (2).

The government asserts that each document was examined on an individual basis, and each classified by a top secret classification authority (¶ 5). Busching further affirms that he received, as a declassification authority, all withheld classified paragraphs (¶ 7). Documents over twenty years old were reviewed by the Departmental Review Committee (¶ 11). Thus, contrary to plaintiff's suggestion, the court is persuaded, as was Judge Weinfeld in *Lamont v. Dept. of Justice, supra,* that

> more detailed description of the withheld classified portions of this document would identify the source and could reasonably be expected to result in identifiable damage as explained in paragraphs (4)(A)(1) and (A)(2) above.

The disclosure in the April 23 Smith Affidavit of some formerly classified items is instructive in the possible overinclusiveness of the government's approach to these documents. For example, an item that was deleted from document 188 because it contained a "singular identifier for an intelligence source" Busching Affidavit at 17, was later revealed to contain nothing more than the size and price of a Harvard University Press book that was being scrutinized by the FBI. See Smith Affidavit, p. 1.

---

**4.** A typical description for a 1–301(c) deletion is as follows:

> Document Number 49, File Number 100–335070, Serial 28, is a letter dated 8/9/54 consisting of 2 pages. This document was classified *Confidential* on 9/20/79 by Classification Authority SP–2. The withheld classified portions, further described below, meet the classification requirements of E.O. 12065, 1–5. The withheld classified portions are confined to page 1, paragraphs 2, 3, 4, 5, 6, 7, and 8. Page 1, paragraph 2 contains a singular identifier for the intelligence source who provided the information. The remaining classified portions contain information about plaintiff's association with other individuals. Due to the uniqueness of the information, a

the interests identified in the FBI's affidavits are such that their disclosure might cause "identifiable damage to the national security": the Government's ability to gather intelligence information essential to national defense and security could be undermined if its secret sources and investigatory methods ... were disclosed to the public.

475 F.Supp. at 770.

Accordingly, defendants are ordered to produce for *in camera* inspection those items listed in the margin.[5] Summary judgment is granted with respect to the remaining items exempted pursuant to subsection (b)(1).[6]

*Exemption (b)(6)*

This exemption shields "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6) (1976). One two-page document is at issue: a letter from a private citizen to the Department of State concerning academic contacts between that citizen and a Soviet professor, and an office memorandum from a State Department official regarding his conversation with the citizen about those contacts. *See* Affidavit of William Blair, p. 2. The Blair Affidavit indicates that the citizen brought these contacts to the government's attention and that the citizen has specifically requested that his name not be disclosed in the instant action. *Id.* at 3. Only the citizen's name and address were excised from the document produced for Diamond.

■ The government contends that this document constitutes a "similar file" within the (b)(6) exemption and that disclosure would result in a clearly unwarranted invasion of privacy. The term "similar file" is to be interpreted broadly, *Dept. of Air Force v. Rose*, 425 U.S. 352, 372, 96 S.Ct. 1592, 1604, 48 L.Ed.2d 11 (1976), and the "common denominator in 'personnel and medical and similar files' is the personal quality of information in the files." *Wine Hobby USA, Inc. v. United States Internal Revenue Service*, 502 F.2d 133, 135 (3rd Cir. 1974). A variety of government files have been held to constitute "similar files." *See e.g. Lamont v. Dept. of Justice, supra*, 475 F.Supp. at 781 (FBI internal security records identifying private citizens); *Pacific Molasses Co. v. NLRB*, 577 F.2d 1172 (5th Cir. 1978) (union authorization cards); *Rural Housing Alliance v. United States Dept. of Agriculture*, 498 F.2d 73 (D.C.Cir.1974). Nor has plaintiff challenged this characterization.

■ Plaintiff takes issue, in general terms, with the outcome of defendants' balancing the individual's privacy right against the public interest in disclosure, *Dept. of Air Force v. Rose, supra*, 425 U.S. at 372, 96 S.Ct. at 1604; *Ferry v. Central Intelligence Agency*, 458 F.Supp. 664, 666 (S.D.N.Y. 1977) (Bonsal, J.), asserting that, on balance, Diamond's scholarly need for the information compels disclosure. In this instance, the government has been careful in its use of the exemption, deleting only the address and name from the document. Further, the Blair Affidavit is thorough and forthcoming about the document's history and the informant's desire to remain unidentified. Plaintiff, on the other hand, has not even attempted to show why the particular name of this private citizen is necessary to his scholarly work, *Ferry v. Central Intelligence Agency, supra* at 666–67. The government's use of this exemption is proper, *see also Lamont, supra*, 475 F.Supp. at 782; *St. Louis Post-Dispatch v. FBI*, 447 F.Supp. 31, 38 (D.C.1977), and the motion for summary judgment is granted on this exemption.

*Exemption b(7)(C)*

The largest number of exemptions is claimed under exemption subsection 7(C), which allows non-disclosure of

---

**5.** Specifically, *in camera* inspection is ordered of the items withheld pursuant to 1–301(c) in documents 44, 48, 49, 52, 129, 132, 179, 180, 183, 188, 190, 194, 196, 199, 200, 202, 212, 213, 214, 215, 216, 222, 238, 239, 241, 245, 248, 252, 259, 267, 234, and 236.

**6.** Summary judgment is granted as to the 1–301(b) and (d) deletions found in Documents 13, 145, 184, 193, 210, 211, 222, 229, 240, and 253.

investigatory records compiled for law enforcement purposes, but only to the extent that the production of such records would ... (C) constitute an unwarranted invasion of personal privacy.

5 U.S.C. § 552(b)(7) (1976). Pursuant to this exemption, the government has withheld from the released documents information about third parties appearing therein: names of FBI agents, clerical personnel, non-federal law enforcement officers, and government employees. Also deleted under this exemption were the names and personal information about third parties who were interviewed. Determining the propriety of non-disclosure under (b)(7)(C) involves balancing "the privacy interest and the extent of the invasion thereof against the public interest in disclosure ... 'tilt[ing] the balance in favor of disclosure.'" *Lamont v. Dept. of Justice, supra,* 475 F.Supp. at 777, *quoting Getman v. NLRB,* 450 F.2d 670, 674 (D.C.Cir.1971). Moreover, since the "unwarranted invasion" standard for the (b)(7)(C) exemptions is less demanding than the "clearly unwarranted invasion" standard under (b)(6), it has been suggested that "greater weight should be given to the claim of privacy when Exemption 7(C) is invoked." *Deering Milliken v. Irving,* 548 F.2d 1131, 1136 n.7 (4th Cir. 1977).

Plaintiff challenges the use of this exemption on two general grounds. First, he contends, the public interest in the effect and extent of FBI intrusions into the institutions of our society is great. *See also Ferguson v. Kelley,* 448 F.Supp. 919, 922 (N.D.Ill.1977); *Katz v. Dept. of Justice,* 498 F.Supp. 177, 181 (S.D.N.Y.1977) (Lowe, J.). These intrusions are plaintiff's scholarly focus. Second, he argues, the privacy interests of the government personnel and the informants are diminished with the passage of time. *Cf. Lesar v. U. S. Dept. of Justice,* 636 F.2d 472, 487–88 (D.C.Cir.1980), 636 F.2d at 487–88 (public disclosure of identities would constitute unwarranted invasion in light of contemporary and controversial nature of information).

■ The court recognizes the public interest involved in the subject of plaintiff's research, for the McCarthy era was a lamentable period in this country's history, and its presupposition that political dissent is dangerous, an unacceptable political artifact of those times. Thus, the scope of FBI surveillance of academia is a matter of genuine public concern. Nonetheless, the privacy interest of the government personnel mentioned in the documents is also manifest. "[P]ublic identification of any of these individuals could conceivably subject them to harassment and annoyance in the conduct of their official duties and in their private lives." *Lamont, supra* at 777, *quoting Nix v. United States,* 572 F.2d 998, 1006 (4th Cir. 1978). Courts have standardly applied exemption 7(C) to authorize non-disclosure of the identities of such personnel. *See e.g. Lesar, supra; Terkel v. Kelly, supra; Nix, supra; Lamont, supra.* Other than his general contention that privacy interests have diminished with time, plaintiff has advanced no reason why the identities of the government personnel are in any way important to his research, and it is implausible that the identities, for example, of clerical personnel could be significant. Accordingly, the deletion of names and addresses of FBI agents, clerical personnel, non-federal law enforcement officers and government employees will be sustained.[7]

---

7. Specifically, summary judgment is granted as to the deletions made pursuant to § 552(b)(7)(C) at the following locations:

| Doc. # | Page(s) (¶, line) |
|---|---|
| 10 | 1 |
| | 4 |
| | 12 (¶ 3, line 4; ¶ 4, line 1; ¶ 5, line 1) |
| 11 | 1 |
| 12 | 1 |
| 13 | 1, 5 |
| 14 | 1 (upper right hand corner; ¶ 2, line 1) |
| 15 | 1 |
| 16 | 1 |
| 20 | 1 |
| 21 | 1, 4, 5, 7 |
| 22 | 5 |
| 23 | 2 |
| 24 | 1, 3 |
| 25 | 1 |
| 28 | 1, 2 |
| 31 | 1, Amended 14, 15 |
| | Original 14 (¶ 1, lines 1, 2, 4, 5; ¶ 2, line 1; ¶ 4, lines 1, 2; ¶ 5, lines 1–4) |
| | Original 15 (¶ 13) |
| | Original 16 (¶¶ 9, 15) |

A somewhat greater public interest may be seen with regard to the redaction of names and identifying information about third persons. Public knowledge about the scope of FBI academic surveillance will arguably be enhanced by disclosing who was being investigated. Similarly, the scope of institutional cooperation with the government's investigations are of legitimate historical interest, and the names and professional status of those who cooperated with the FBI would arguably further our understanding of the period. *Cf. Flower v. FBI,* 448 F.Supp. 567 (N.D.Tex.1978); *Katz v. Dept. of Justice, supra.*

The counterbalancing privacy interest is also obvious, and weighty:

> [D]isclosure would likely cause embarrassment to the third party, either because sensitive, derogatory, or intimate personal information about him or her is contained in the file, or because the person's cooperation with the FBI investigation would itself prove embarrassing.

*Lamont, supra* at 777. Courts have frequently upheld the exemption of third parties' identities to protect their privacy, *e.g. Librach v. FBI,* 587 F.2d 372 (8th Cir. 1978), *cert. denied,* 440 U.S. 910, 99 S.Ct. 1222, 59 L.Ed.2d 459 (1979); *Maroscia v. Levi,* 569 F.2d 1000 (7th Cir. 1977). Moreover, courts have also concluded that interviewee's names should be withheld to insure that individuals may talk freely with FBI officials without fear of subsequent disclosures and possible reprisals. *See e.g. Scherer v. Kelley,* 584 F.2d 170, 176 (7th Cir. 1978), *cert. denied,* 440 U.S. 964, 99 S.Ct. 1511, 59 L.Ed.2d 778 (1979); *Forrester v. United States Dept. of Labor,* 433 F.Supp. 987, 989 (S.D.N.Y.1977) (MacMahon, C.J.), *affirmed,* 591 F.2d 1330 (2d Cir. 1978); *Frankel v. SEC,* 460 F.2d 813 (2d Cir.), *cert. denied,* 409 U.S. 889, 93 S.Ct. 125, 34 L.Ed.2d 146 (1972).

There are two respects, however, in which the government's use of exemption 7(C) is troublesome. First, in several instances the government has excised material that appears far to exceed the amount necessary to protect the identity of any third parties involved. The sheer amount, sometimes as much as several consecutive pages, and the context of such deletions suggests that a considerable quantity of non-exemptable material may have been withheld along with properly exempt items. The affidavit of special agent Donald Smith, which describes the FBI's responses to plaintiff's FOIA requests does not discuss each of the (b)(7)(C) exemptions.

| Doc. # | Page(s) (¶, line) |
|---|---|
| 32 | 1 |
| 34 | 1 |
| 35 | 1 (upper right hand corner) |
| | 2 (¶ 7) |
| | 3 |
| 36 | 1 |
| 37 | 1 |
| 38 | 1 (upper right hand corner) |
| | 4 |
| | 5 (¶¶ 1, 2, 3, 4, 5, 6, 7) |
| | 6 |
| 40 | 1 |
| 41 | 1, 3 |
| 42 | 1 |
| 45 | 2 |
| 47 | 1 |
| 48 | 1 |
| 62 | 1 |
| 78 | 1 |
| 83 | 2 (¶ 1, line 2) |
| | 3 (¶ 6, line 1) |
| | 4 (¶ 1, line 1) |
| 84 | 1 (¶ 1, line 5; ¶ 2, line 2; ¶ 3, lines 10, 11) |
| | 2 (¶ 5, line 1) |

| Doc. # | Page(s) (¶, line) |
|---|---|
| 91 | 1 |
| 121 | 1 |
| 140 | 1 (upper right-hand corner) |
| 178 | 1 |
| 181 | 1 |
| 222 | 5 (¶ 2, lines 3, 5, 7) |
| | 7 (¶ 1, lines 8, 11, 13, 15, 17) |
| 223 | 2 (¶ 8) |
| | 3 (¶ 1, ¶ 2, ¶ 3, ¶ 4; ¶ 8, line 1; ¶ 10, line 1) |
| | 4 (¶¶ 1, 2, 3, 4, 5, 6) |
| 229 | 1, 23 |
| 234 | 1 (upper right hand corner) |
| 238 | 1 (¶ 2, line 1) |
| 242 | 3 (¶ 4, line 3) |
| | 4 (¶ 2, line 4; ¶ 3, lines 1, 2) |
| 245 | 1 (upper right hand corner) |
| 259 | 2 (¶ 2, line 1) |
| | 3 (¶ 7, line 2) |
| | 4 (¶ 5, lines 2, 3) |
| | 6 (¶ 3, lines 2, 3) |
| | 7 (¶ 4, line 1) |
| 262 | 1 (¶ 1, lines 5, 7, 9) |
| 296 | 1, 4 |

Rather, the Smith Affidavit comments on the exemptions in general terms, and describes, categorically, the sorts of harms that might result from release of the withheld portions. The documents themselves, attached as exhibits to the Smith Affidavit, are each preceded by forms specifying the redactions. However, in some cases, several pages have been deleted relative to the 7(C) exemption, and neither the Smith Affidavit nor the forms provide any detail regarding why so much material was withheld. In perhaps the most striking example of this, document 87, only two out of a total of twenty-nine pages were released, but the only explanation is that the remaining twenty-seven pages were "withheld in their entirety pursuant to exemption (b)(7)(C) to protect the names, file numbers and information pertaining to the activities of [various] individuals who were the subjects of investigations by the FBI." Here, as for the (b)(1) exemptions already discussed, the court finds it necessary to order an *in camera* inspection of a limited number of items, to see if non-exempt material may be segregated and released.[8] *See Lamont, supra,* 475 F.Supp. at 778.

Second, since the material that plaintiff seeks is thirty or more years old, the privacy interests of the third parties are not all of a piece. It may well be, as plaintiff suggests, that some of the individuals connected with the investigations are now dead, in which case their privacy interests are diminished, *Cordell v. Detective Publications, Inc.,* 419 F.2d 989, 990 (6th Cir. 1969), *Prosser on Torts,* § 112 at 843 (3rd ed. 1964), and the balance tips towards disclosure. Further, it may be, as Diamond argues, that some of the third parties involved would prefer to allow release of the information regarding their involvement, but defendants have not checked with them to determine their preferences.

These difficulties are epistemological in nature, and not necessarily legal. To disclose the identities of third parties without determining their status or their preferences would jeopardize their privacy as well as future cooperation with FBI investigations. Plaintiff has volunteered to provide information regarding any third party's status, but he can hardly state if an unidentified party is living; yet to provide plaintiff with a list of names does much to reveal the third parties' identities. Despite the remarks, cited by plaintiff, of an official of the Department of Justice that it is standard pre-trial procedure to check with third parties to ascertain their preferences on disclosure, it is unduly burdensome to expect defendants to track down all its sources and interview them about releasing their names and involvement. To this effect, defendants rely on the statement of the Supreme Court in *Kissinger v. Reporter's Comm. for Freedom of the Press,* 445 U.S. 136, 152, 100 S.Ct. 960, 969, 63 L.Ed.2d 267 (1980): "The Act does not obligate agencies to create or retain documents; it only obligates them to provide access to those which it in fact has created and retained."

However, the instant issue does not turn on the government's creating documents and files. Nor does it necessarily require defendants to perform any substantial investigative tasks. The Smith Affidavit explains that the FBI's files, in both the Cen-

---

**8.** Those documents, and the relevant pages, to be examined *in camera* are:

| Doc. # | Page(s) (¶, line) |
|---|---|
| 56 | 2 |
| 83 | 2–4 (except as indicated in note 7) |
| 87 | 1–8; 10–28 |
| 89 | 1–8 |
| 92 | 7–23 |
| 96 | 3–7 |
| 106 | 1 |
| 107 | 1 |
| 130 | 1 (¶ 14, lines 2–14) |
| 133 | 1 (¶ 2) |
| 153 | 3 (¶ 4); 4 |
| 199 | 2 |
| 200 | 2–3 |
| 215 | 2 |
| 236 | 5, 12 (¶ 15), 14 (¶ 1), 16 (¶ 1), 17 (¶ 1), 18 (¶¶ 2 & 3) |
| 237 | 2 |
| 242 | 2–3 (except as indicated in note 7) |
| 245 | 1–4, 6, 9, 10 (except as indicated in note 7) |
| 259 | 2, 3, 4, 6, 7 (except as indicated in note 7) |
| 283 | 1 |

tral Records System and the branch offices, is organized in a series of files referenced and cross-referenced to individuals and organizations, as well as subject matters. (*See* Smith Affidavit at 32–40). In responding to plaintiff's FOIA requests, the files for plaintiff and a number of relevant institutions were searched for responsive documents. (*Id.* at 34–40). Defendant's responsive papers indicate that when a particular file was being evaluated for release, if the file itself "evidences that [a third party] is deceased then the file is processed accordingly." (Defendant's Reply Memorandum, p. 8n). No reason has been adduced, however, why the government could not search its existing files on the third parties to determine if they were still living, or if they have expressed a desire that their involvement be disclosed. In short, if defendants already have knowledge about the third parties, there is no apparent reason why the government's response should not reflect that knowledge.

■ Due to the extraordinary age of the documents at issue, and the likelihood that their age has affected the privacy interests at stake, it is appropriate to require defendants to ascertain in this case if the interviewees' privacy is still at issue. Accordingly, the government is instructed to search the existing files pertaining to the interviewees to determine if any persons whose privacy is at issue are now dead, and if they are still opposed to releasing their names and the fact of their cooperation with the FBI's investigations. A supplementary affidavit is to be submitted, detailing defendants' search of the Bureau's files. This affidavit should state, with respect to each of the interviewees, first, whether the existing files demonstrate if the interviewee is no longer living, and second, if that interviewee has indicated in any manner preferences about disclosing his name and involvement. With respect to the second question, we note that the evidence of the source's preferences should not be restricted

to explicit assent from the source to the government that his involvement be disclosed. Public statements, for example, by the source about his participation in the FBI's investigations are also good indication that he no longer desires to keep his name and involvement confidential. The supplementary affidavit should indicate expressions by the source along these lines. Summary judgment regarding these deletions, therefore, will be withheld pending submission of this supplementary affidavit.[9]

■ Plaintiff has moved to compel "discovery in compliance with *Vaughn v. Rosen,* [*supra*] . . . and this Court's prior order." Presumably, he refers therein to forty questions to which he had sought answers in his previous motion. Those questions went to the application of the FOIA exemptions to the various redactions and withholdings, and were intended to create a record sufficient for litigation and resolution of disputes over the documents. In the previous decision of October 24, 1979, plaintiff's motion to compel answers to those questions was denied, to provide defendants the opportunity to submit the requested indexes and affidavits explaining the exemptions' application to the documents in issue. As is indicated by the court's disposition of defendants' summary judgment motion, the court has found that the government's submission satisfies for the most part the requirements posed by *Vaughn.* To the extent that the government has not fully satisfied those requirements, it appears that the appropriate procedure is to await defendants' supplementary submissions. Plaintiffs' motion for discovery is accordingly denied without prejudice to its subsequent renewal.

Finally, plaintiff has challenged the pattern of defendants' deletions, charging that the government is inconsistent in releasing or excluding the names and identities of agents and informers under the 7(C) exemption. The significance in plaintiff's eyes of this alleged inconsistency is not

---

**9.** This information should be provided regarding each of the individuals whose names were deleted, or whose identities or involvement in an FBI investigation was protected by redactions pursuant to exemption (b)(7)(C) other than those listed in footnote 7.

entirely clear. It may be that he seeks to question the government's good faith in employing the exemptions, and thus to suggest that none of the redactions may properly be regarded as justified. Then, summary judgment should be denied. Or, he may be arguing that the inconsistencies warrant skepticism regarding the government's redactions, such that *in camera* inspection of each of the documents is necessary before summary judgment or disclosure could properly be ordered.

This argument is unpersuasive, whichever form it takes. In the first place, the government's submissions establish that plaintiff's perceptions of inconsistencies are unfounded. In one case, Document 57, deletions were made in the document which had not been made when it was first made available to plaintiff. This is acknowledged by the government to be an oversight. In other instances, the government has shown that no inconsistency was established. For example, plaintiff charges that in Documents 10 and 62, the names of special agents were deleted, but in Documents 14, 57, 58 and 61 agents' names were released. But, the government explains that in the latter set of documents, the agents whose names were released were special agents in charge and assistant directors—FBI officials—and that it was thought that the invasion of privacy and potential harm to these officials was less than in the case of the investigating agents. Therefore, the balance of public interest in disclosure versus privacy and potential harm tipped in favor of disclosure of the officials' names, but not of the investigating agents'. Plaintiff charges that in Document 35, the names of Harvard employees are redacted, but that in Document 91, the name of one such employee, Henry Kissinger, is identified. However, Kissinger is a public figure, and the balance should tip towards disclosure of information, given Kissinger's public prominence. Thus, the thrust of Diamond's concern about the putative inconsistencies is blunted by relevant differences in the situations presented by the different documents.

Second, plaintiff is overstating the potential significance of agency inconsistency, if

such was to be found. "The FOIA is 'neutral', in the sense that it does not prohibit the disclosure of exempt information." *Lopez Pacheco v. F.B.I., supra,* 470 F.Supp. at 1107 (D.P.R.1979). *See also Mead Data Central v. U. S. Dept. of Air Force,* 566 F.2d 242, 258–59 (D.C.Cir.1977) and cases cited at *id.,* 258 n.45. Thus, even if plaintiff had established inconsistencies in defendants' handling of some of the exemptions, it does not follow that other of the exemptions are necessarily not justified. Except in those cases already noted, where *in camera* inspection will be required to determine if segregable, non-exempt material has been withheld, the government's submissions have established that the material withheld or excised falls logically in the category specified by the exemption and that its redaction is justified.

*Exemption on (b)(7)(D)*

This clause authorizes an agency to withhold law enforcement investigatory records if production thereof would

> (D) disclose the identity of a confidential source and, in the case of a record compiled by a criminal law enforcement authority in the course of a criminal investigation, or by an agency conducting a lawful national security investigation, confidential information furnished only by the source,

5 U.S.C. § 552(b)(7)(D) (1976). Pursuant to this exemption, the government has deleted the names of persons who, defendants assert, gave information under express or implied assurances of confidentiality, as well as information they furnished that might tend to identify them. Also withheld were the identities and symbol numbers of confidential sources reporting information to the FBI on a regular basis, identities of commercial institutions and their employees. *See* Smith Affidavit at 46–53.

Under the 7(D) exemption, broad protection has been accorded to the identities of those providing information to the FBI. The informants who provided information on a regular basis did so under express assurances of confidentiality, Smith Affida-

vit at 48, and their identities and the information provided are clearly exempt. *Nix v. United States*, 572 F.2d 998, 1003 (4th Cir. 1978). Courts have also protected the identities of persons interviewed by the FBI, and the information thus gleaned when the interviews occurred in circumstances where confidentiality was expressly assured or where assurances of confidentiality could be reasonably inferred. *Nix v. United States, supra* at 1004–05; *Lamont, supra*, 475 F.Supp. at 779; in a case where, as here, a great deal of the material at issue is old, the interviews are by now dated, and the defendants may well have lost contact with the interviewees, defendants could not be required to demonstrate that each of the interviewees was given an express assurance of confidentiality. As Judge Weinfeld explained in *Lamont v. Dept. of Justice*:

> For an investigation that ranged over a period of thirty years, it is questionable as a practical matter, how the Department could ever make such a showing. For this reason, courts have taken a "functional" approach to such claims and have denied disclosure of the names of such interviewees and other sources where it is apparent that the agency's investigatory function depends for its existence upon information supplied by individuals who in many cases would suffer severe detriment if their identities were known.

475 F.Supp. at 779. *See also Pope v. United States*, 599 F.2d 1383, 1386–87 (5th Cir. 1979); *Evans v. Dept. of Transportation*, 446 F.2d 821, 824 (5th Cir. 1971), *cert. denied*, 405 U.S. 918, 92 S.Ct. 944, 30 L.Ed.2d 788 (1972).

Plaintiff argues, in effect, that exemption 7(D) is properly used only when releasing the confidential sources' identity poses a danger to the source itself. Accordingly, he implies, little or no danger can obtain at this time to sources who contributed information thirty or more years ago. However, the exemption itself does not limit so narrowly the harm to be avoided, and, while many of the cases applying 7(D) have focused on the peril to the sources, *e.g. Nix, supra; Shaver v. Bell*, 433 F.Supp. 438 (N.D.Ga.1977), courts have protected confidential sources against less dramatic detriments as well. This exemption's use merely to protect the particular source from embarrassment has been upheld. *Lamont, supra* at 779, *Maroscia v. Levi*, 569 F.2d 1000, 1002 (7th Cir. 1977).[10]

Even more important has been the use of (b)(7)(D) to preserve the government's ability generally to secure the assistance of confidential sources. The Smith Affidavit explains that cooperation of sources in interviews is the FBI's most important investigative tool, at 47–48, and that fear of exposure impedes that cooperation. *Id.* at 47. Thus, the Bureau's investigative efforts would be hampered if sources were identified, and the public could no longer rely on assurances and assumptions of confidentiality. Courts have recognized that identifying confidential sources will generally impede access to other possible informational prospects. *See also Frankel v. SEC, supra*, 460 F.2d at 817–818.

While it is clear that the identities of the sources of confidential information should be protected, it does not follow that defendants have demonstrated that the interviewees' names should in every case be withheld. For the interviewees for whom implicit confidentiality is asserted, the Smith Affidavit provides no particulars about the interviews or the circumstances under which they were conducted which would allow the court to assess whether assurances of confidentiality could reasonably be inferred. Rather, Smith states quite generally that "Persons interviewed often assume, quite logically,

---

**10.** As Judge Weinfeld explained, there is a substantial overlap between the 7(C) and 7(D) exemption as regards the identities of the interviewees:

> Not only should the names of interviewees be withheld under Exemption 7(D) on the grounds that they could reasonably have assumed that their identities would not later be revealed, but the Court further holds that since disclosure of their cooperation might now be embarrassing to them, their identities are also protected by Exemption 7(C).

*Lamont, supra* at 779.

that the information they furnish is for the assistance of the FBI only in the fulfillment of its responsibilities, and their identities and the act of their cooperation with the FBI will not be publicly exposed." Smith Affidavit at 46. Nor are the explanations and descriptions of the deleted material which precede the individual documents more forthcoming. As a result, nothing in the record before this court indicates why assurances of confidentiality could reasonably be inferred other than the assertion by Smith that such is the case.

█ Accordingly, summary judgment is granted as to the deletions of the identities of informants and interviewees who provided information under express assurances of confidentiality.[11] However, the situation is different for the names of the interviewees for whom, it is claimed, confidentiality was implicitly assured.

Since the burden is on the government to justify the non-disclosure, *Ray v. Turner, supra; Weissman v. CIA, supra,* I cannot accept an unsupported statement that each interview was conducted under an implied assurance of confidentiality.[12] Nor have defendants justified their assertion of the 7(D) exemption by affirming, in blanket fashion, that its interviews were all con-

11. Those deletions are:

| Doc. # | Page(s) (¶, line) |
|---|---|
| 10 | 2 all |
| | 3 (¶ 1, lines 2, 6, 42, 44, 46) |
| | 6 (¶ 1, lines 3–6; ¶ 5, lines 1, 2, 3, 7) |
| | 7 (¶ 8, line 5) |
| | 8 all |
| | 9 (¶ 1, line 6; ¶ 6, lines 5–6) |
| | 12 (¶ 2, lines 1–3) |
| 12 | all |
| 13 | all |
| 14 | all |
| 15 | all |
| 16 | all |
| 21 | 2 all; 3 all; 4 all |
| | 5 (¶ 2, line 1; ¶ 3, line 1; ¶ 4, lines 1–4; ¶ 5, line 1; ¶ 6, line 1) |
| | 6 (¶ 1, line 1; ¶ 2, line 1; ¶ 3, line 1; ¶ 4, line 1; ¶ 5, line 1; ¶ 6, line 1) |
| 24 | all |
| 29 | all |
| 31 | all |
| 38 | all |
| 44 | all |
| 49 | all |
| 56 | 2 (¶ 1, lines 4–6) |
| 73 | all |
| 83 | 2 (¶ 2, lines 4, 5, 6; ¶ 6, lines 3, 4, 5, 7) |
| | 3 all |
| 130 | 1 (¶ 1, lines 1–3; ¶ 2, line 1; ¶ 3, line 1) |
| | 2 (¶ 1, line 1) |
| 131 | 1 (¶ 2, lines 3, 5, 6; ¶ 6, line 1; ¶ 7, line 1) |
| 132 | 1 (subject lines 1–4) |
| | 2 all |
| 133 | all |
| 134 | all |
| 135 | all |
| 136 | all |
| 139 | all |
| 140 | all |
| 196 | all |
| 200 | all |
| 211 | all |

| Doc. # | Page(s) (¶, line) |
|---|---|
| 214 | all |
| 221 | all |
| 229 | all |
| 236 | all |
| 242 | all |
| 245 | all |
| 248 | all |
| 252 | all |
| 259 | all |
| 277 | all |
| 280 | 1 (¶ 1, line 1) |
| 281 | all |
| 282 | all |
| 287 | all |
| 288 | all |
| 289 | all |
| 290 | all |
| 295 | all |
| 297 | all |

12. A contrary result was reached in *Lopez Pacheco v. Federal Bureau of Investigation,* 470 F.Supp. 1091 (D.P.R.1979) where the court upheld defendants' redactions pursuant to exemption 7(D) on similar allegations that confidentiality had been impliedly assured. However, a comparison of the government's affidavit in support of the exercise of the exemption in *Pacheco, see* 470 F.Supp. at 1102–3, with the Smith Affidavit at hand reveals some part of my concern in the instant litigation. The Smith Affidavit reiterates the affidavit submitted by special agent Loome in *Pacheco* not just line for line but virtually word for word. Thus, the Smith Affidavit engenders concern that the government has not reviewed these documents and the interviewees' circumstances individually, but rather has relied on boilerplate assertions which amount to no more than the claim that any interview conducted by its agents conveyed implicit assurances of confidentiality. *Cf. Nemetz v. Dept. of Treasury,* 446 F.Supp. 102 (N.D.Ill.1978) (denying Privacy Act exemption (k)(5) where defendants' had asserted only general policy of assuring confidentiality).

ducted under circumstances in which assurances of confidentiality could reasonably be inferred.[13] Even if interviewees often assume that their identities will be protected when they volunteer information to the FBI, it cannot be determined from the record before the court whether the interviewees even knew that their interviewer was an FBI agent. Nor can it be concluded from the government's submissions what the interviewees were told about the subject of the Bureau's investigation, and whether they would properly have felt it to be "highly sensitive and serious," *Lamont, supra,* 475 F.Supp. at 779, such that their confidentiality should be assured. In short, the government has not demonstrated its entitlement to summary judgment with respect to its redaction of the identities of allegedly confidential sources. *Deering Milliken, Inc. v. Irving, supra,* 548 F.2d at 1136–37.

As Judge Weinfeld explained in *Lamont, supra,* it would be impracticable to expect the defendants to produce affidavits or testimony from the agents who received the information to evidence the circumstances of the alleged confidentiality. It is appropriate, however, to require the government to submit a supplemental affidavit describing in further detail the context in which the information was received and whether the nature of the Bureau's investigation was revealed to the interviewee, to the extent that such information can be found in the Bureau's files and records.

With respect to the government's sources other than its interviewees, however, the government's claim of exemption may be upheld. While it is apparently a matter for debate in other jurisdictions, *see, e.g. Ferguson v. Kelley, supra,* 448 F.Supp. at 925, *on motion for reconsideration,* 455 F.Supp. 324, it is clear that in this circuit local law enforcement agencies may constitute "confidential sources" for the purposes of (b)(7)(D). *Keeney v. FBI, supra,* 630 F.2d at 119. Although the holding in *Keeney* was explicitly restricted to local law enforcement agencies, other courts have extended the exemption to cover other law enforcement agencies generally, *e.g. Church of Scientology v. U. S. Dept. of Justice,* 612 F.2d 417 (9th Cir. 1979); *Terkel v. Kelly, supra,* 559 F.2d at 126, and commercial institutions, *Terkel v. Kelly, supra; Nix v. United States, supra,* 572 F.2d at 1005. These decisions accord with the reasoning of the *Keeney* decision and will be followed here. Accordingly, summary judgment will be granted for the exemption of the names and symbol numbers of law enforcement agencies and commercial institutions.[14]

The protection provided to information supplied by confidential sources is also troublesome. It is clear that exemption 7(D) protects such information which, if disclosed, might reasonably lead to disclosure of the informant's identity. *See e.g. Scherer v. Kelley, supra; Maroscia v. Levi, supra,* 569 F.2d 1000. The Smith Affidavit asserts that "wherever the information would not identify the sources, it has been left in the document," at 47, but the court is less san-

---

**13.** Judgment is withheld with respect to the following redactions, pending the government's submission of its supplementary affidavit:

| Doc. # | Page(s) (¶, line) |
| --- | --- |
| 10 | 3 (¶ 1, lines 22–25) |
| | 9 (¶ 6, lines 5–6) |
| | 13 (¶ 1, lines 1, 2) |
| 11 | all |
| 56 | 1 (¶ 1, lines 1, 3, 4, 5, 6; ¶ 2, lines 1, 3, 4, 5, 6) |
| | 2 (¶ 3, lines 6, 7; ¶ 4, line 2) |
| 84 | all |
| 106 | all |
| 107 | all |
| 108 | all |
| 110 | all |

| Doc. # | Page(s) (¶, line) |
| --- | --- |
| 153 | all |
| 197 | all |
| 222 | all |
| 224 | all |
| 246 | all |

**14.** Specifically, judgment is granted with respect to the following exemptions:

| Doc. # | Page(s) (¶, line) |
| --- | --- |
| 10 | 3 (¶ 1, lines 4, 5 & 6) |
| | 12 (¶ 16, lines 1–3) |
| 21 | 1 (¶ 1, lines 10, 11) |
| | 5 (¶ 1, lines 1, 2, 6, 7, 8, 9 & 10) |
| | 6 (¶ 17, line 1; ¶ 8, line 1; ¶ 9, line 1) |
| 22 | 5 (¶ 10, lines 1, 4, 5, & 6) |
| 53 | 1 (TO: line) |
| 83 | 2 (¶ 3, lines 5, 8) |

guine after reviewing the documents. As was the case for the 7(C) exemption, defendants have withheld, on occasion, substantially more material than would seem necessary to protect the source's identity. On some occasions, as much as a full page has been redacted pursuant to this exemption. Nor is Smith sufficiently specific in explaining these excisions to indicate adequately why such extensive deletion is necessary. For example, three paragraphs of page one of Document 129, and all of page two, were withheld to protect a regular source, but the only justification was the conclusory assertion that releasing the information would lead to the informant's identification. Accordingly, a limited number of the withheld pages and passages must be reviewed *in camera* to determine if non-exempt material has been withheld.[15]

Further, since the status of some of the allegedly confidential sources remains in doubt until the government submits the additional information regarding the redaction, it is impossible at this time to evaluate defendants' failure to disclose information provided by those sources. Nonetheless, it is appropriate to note that for many of those redactions as well, it appears that non-exempt segregable material may have been withheld. Thus, even if the government is upheld in its assertions of implied confidentiality, some of the information withheld may have to be examined *in camera.*

As was acknowledged by Judge Weinfeld in *Lamont, supra,* the court recognizes its obligation to inspect the materials with due deference to defendants' judgment, "and will sustain its claims of exemption where the context of the material bears out the assertion that it is confidential information furnished only by the confidential source or might identify the source if revealed to plaintiff." 475 F.Supp. at 780.[16]

*Exemption (k)(5)*

█ Portions of five documents have been deleted pursuant to subsection (k)(5) of the Privacy Act, 5 U.S.C. § 552a. This provides, in pertinent part, that an agency may withhold

investigatory material compiled solely for the purpose of determining suitability, eligibility, or qualifications for Federal civilian employment . . . but only to the extent that the disclosure of such material would reveal the identity of a source who furnished information to the Government under the express promise that the identity of the source would be held in confidence, or, prior to the effective date of this section, under the implied promise that the identity of the source would be held in confidence...

5 U.S.C. § 552a(k)(5) (1976). These exemptions raise issues and arguments similar to those seen with respect to the (7)(C) and (7)(D) exemptions of the FOIA.[17]

Smith affirms (52–54) that the persons interviewed logically assume that their identities and their cooperation would be kept confidential. Similarly, his affidavit explains, cooperation from law enforcement agencies and commercial institutions in processing the background information provided on employment applications would be

---

15. Specifically, *in camera* inspection is required for the following redactions:

| Doc. # | Page(s) (¶, line) |
|---|---|
| 129 | 1 (¶¶ 2–4) |
| | 2 |
| 130 | 1 (¶ 4) |
| 131 | 1 (¶¶ 3, 4, 5) |
| 132 | 1 (¶¶ 3–7) |
| | 2 |
| 280 | 1 (¶¶ 2–6) |
| 283 | 1 (¶¶ 1, 2) |
| 291 | 2 (¶¶ 1–3) |

16. With regard to the 7(D) exemption, as was true for 7(C), plaintiff has challenged what he

perceived as inconsistencies in the government's treatment of certain redactions. As was the case for the alleged inconsistencies in the use of the 7(C) exemption, plaintiff has failed to establish the presence of any troubling inconsistencies. Further, as was noted, *supra,* the mere presence of inconsistencies is not in itself probative of the government's good faith or reliability in employing the exemptions.

17. As the court noted in *Castle v. U. S. Civil Service Commission,* 77 Civ. 1544 (D.D.C. 1979), virtually no decisions have dealt directly with this issue, but cases pertaining to the 7(C) and 7(D) exemptions are pertinent.

impeded if the assumed confidences were not honored. The (k)(5) exemption has been invoked a limited number of occasions in these documents, and in each case only small passages, usually one line or less, have been deleted.

Plaintiff's challenge to the use of this exemption has been desultory. He argues only that the age of the material belies any danger attributed to its disclosure, and that defendant should be required to justify any assumption of confidentiality. Plaintiff has not argued effectively why the material's age should be thought to extinguish the need to protect the identity of the sources involved. Even if the privacy interests of the informers are diminished with the passage of time, *see supra*, their privacy interests are not the only, or even the dominant, basis for protecting their identities. As the Smith Affidavit has explained, ongoing confidentiality regarding an informant's identity is vital to the success of the government's investigations of employment applications, no matter how long ago their contribution. It would impede the government's investigatory capacity to reveal the names of those persons who supplied confidential information about an applicant for federal employment applicants.

Nor is plaintiff's argument persuasive, relying on *Nemetz v. Dept. of Treasury*, 446 F.Supp. 102 (N.D.Ill.1978), that defendants should be required to justify any assumption of implied assurances of confidentiality. In *Nemetz*, the court concluded that defendant's statement that it had been a policy of the Secret Service to assure sources of confidentiality was not sufficient to justify the excision of material in that case, especially in light of the government's apparently inconsistent treatment of source identities, releasing some but protecting others. The Smith Affidavit alleges more than the existence of a policy of assuring confidentiality, and asserts in each case that the interview presented a situation in which confidentiality is implied. There is no basis apparent for not accepting those allegations and more should not be expected of the Bureau with respect to sources more than thirty years old. *Cf. Lamont, supra* at 779.

*The Scope of Plaintiff's Requests*

The government refused to release a limited number of documents to plaintiff on the grounds that they were beyond the scope of his request. Plaintiff has challenged these refusals, arguing, for the most part, that the government's pattern of such refusals is inconsistent. However, as has been seen previously, charges of inconsistency are ineffectual without more. The thrust of the Act's grounds for withholding documents are permissive rather than mandatory, *Mead Data Central v. U. S. Dept. of Air Force, supra*. The government has effectively rebutted plaintiff's charges that defendants construed the requests too narrowly, and summary judgment is granted with respect to these documents.

*Damages*

 Plaintiff has also sought damages in the action. However, the FOIA does not provide for damages for defendant's failure to produce documents. *See* 5 U.S.C. § 552(a)(4)(B); *King v. Califano*, 78 Civ. 1158 (D.D.C.1979). Damages may be awarded under the Privacy Act, 5 U.S.C. § 552a(g)(4)(A), if the agency has acted in "a manner which was intentional or willful," § 552a(g)(4), but plaintiff has not attempted the requisite showing to meet that yardstick.

*Fee Waiver and Attorney's Fees*

 Plaintiff has challenged the government's denial of his application for a waiver of duplication fees, charged for the documents released to him. He has also moved, pursuant to 5 U.S.C. § 552(a)(4)(E), for an award of attorney's fees of $7,500.00.

The Act provides that each agency shall set a schedule of reasonable fees for document searches and duplication. 5 U.S.C. § 552(a)(4)(A). That subsection also provides, in pertinent part, that:

> Documents shall be furnished without charge or at a reduced charge where the agency determines that waiver or reduction of the fee is in the public interest because furnishing the information can be considered as primarily benefitting the general public.

The Department of Justice regulations governing fee waivers are set out in 28 C.F.R. §§ 16.9(a) and 16.46(a), which leave the waiver or reduction of fees to the discretion of the responsible individual determining access, for grounds such as indigency or benefit to the public as opposed to the requester individually. Plaintiff first sought a waiver of fees in a letter dated March 7, 1979, and appealed, on May 4, 1979, the initial denial of the waiver. Plaintiff contended, and still contends that he is a private individual, bearing the entire cost of research on an important subject. By a letter dated October 18, 1979, Diamond was advised that the waiver denial had been upheld. Two reasons were cited in that October letter. First, it was asserted that the actual benefit to the public of releasing the information could only be assessed after release. Second, the letter argued that the Department of Justice received a large number of waiver requests from authors, citing the same grounds as had plaintiff, and that, if each were granted, the total cost in public funds would be vast, "with no real guarantee of any benefit to the general public." The fees at issue total $62.00. Both plaintiff and defendants have acknowledged that the appropriateness of the fee waiver will depend, in part, on the importance that may be ascribed to the release of the documents. This, in turn, will depend on the court's *in camera* review of a number of documents, for only then can the historical significance be assessed accurately. Accordingly, the review of the FBI's denial of Diamond's application for fee waiver will be stayed until *in camera* review is completed.

Similarly, plaintiff's motion for attorney's fees must be stayed until review of the redactions and withholdings is finished. Reasonable attorney's fees may be awarded only when plaintiff has "substantially prevailed" under the Act. § 552(a)(4)(E). If plaintiff has substantially prevailed, it is within the court's sound discretion to award him such fees. *Vermont Low Income Advocacy Council, Inc. v. Usery,* 546 F.2d 509, 513 (2d Cir. 1970); *Kaye v. Burns,* 411 F.Supp. 897, 903 (S.D.N.Y.1976) (Carter, J.).

To establish that he has substantially prevailed under the Act, Diamond must show "at a minimum that the prosecution of the action could reasonably have been regarded as necessary and that the action had a substantial causative effect on the delivery of the information." *Vermont, supra* at 513. While it seems clear that plaintiff's action was necessary to secure from the government the indexes and affidavits that would permit litigation and resolution of the disputes concerning these documents, plaintiff has not shown, nor does it appear, that his action has, as yet, caused documents to be released. This question, as well as the historical significance of the information released, can only be evaluated after the court has reviewed the documents *in camera* that it has ordered to be produced, to see if any non-exempt segregable material has been withheld.

IT IS SO ORDERED.