Louis (Studs) TERKEL,
Plaintiff-Appellant,

v.

Clarence KELLY, Edward Levi, The Federal Bureau of Investigation, and The Department of Justice, Defendants-Appellees.

No. 78–1313.

United States Court of Appeals,
Seventh Circuit.

Argued Dec. 5, 1978.

Decided May 25, 1979.

Rehearing Denied June 29, 1979.

Lance Haddix, Chicago, Ill., for plaintiff-appellant.

Thomas P. Sullivan, U. S. Atty., Antonio J. Curiel, Asst. U. S. Atty., Chicago, Ill., for defendants-appellees.

Before TONE, LAY,* and BAUER, Circuit Judges.

BAUER, Circuit Judge.

This is an appeal arising under the Freedom of Information Act, 5 U.S.C. § 552. The appellant Louis ("Studs") Terkel requested the Federal Bureau of Investigation to provide him with "a copy of all files in the FBI indexed or maintained under my name and all documents containing my name." The FBI released 146 pages of documents,[1] but withheld some material under provisions of the Act permitting nondisclosure. Terkel subsequently instituted an action in the district court to compel disclosure of the withheld material. After reviewing the affidavits and attachments, the district court granted the government's motion for summary judgment. On appeal, Terkel argues that the lower court erred in failing to conduct an *in camera* examination of the challenged material.

### I.

A brief outline of the relevant statutory framework will provide a useful point of departure. In 1974 Congress amended the FOIA provisions that governed the role of a reviewing court in considering claims of exemptions under the Act. The 1974 revision provided that

"the court shall determine the matter *de novo,* and may examine the contents of such agency records *in camera* to determine whether such records or any part thereof shall be withheld under any of the exemptions set forth in subsection (b) of this section, and the burden is on the agency to sustain its action." 5 U.S.C. § 552(a)(4)(B) (1974).

The Conference Report accompanying the amendments explained that "[w]hile *in camera* examination need not be automatic, in many situations it will plainly be necessary and appropriate." S.Rep.No.93–1200, 93d Cong., 2d Sess. 9 (1974), U.S.Code Cong. & Admin.News, 1974, pp. 6267, 6287.

In the case at hand, the FBI has relied on several exemptions under the FOIA to withhold various documents or portions thereof from the appellant. One of the claimed exemptions is § 552(b)(1), which, as amended, exempts matters that are "(A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified pursuant to such Executive order." On the role of the reviewing court in dealing with this exemption, the Conference Committee Report noted that

"the Executive departments responsible for national defense and foreign policy matters have unique insights into what adverse effects might occur as a result of public disclosure of a particular classified record. Accordingly, the conferees expect that Federal courts, in making *de novo* determinations in Section 552(b)(1) cases under the Freedom of Information law, *will accord substantial weight to an agency's affidavit concerning the details of the classified status of the disputed record.*" S.Rep.No.93–1200, 93d Cong., 2d Sess. 12 (1974) U.S.Code Cong. & Admin. News 1974, p. 6290 (emphasis added).

---

* The Hon. Donald P. Lay, Judge of the United States Court of Appeals for the Eighth Circuit, is sitting by designation.

1. According to agency affidavits, the FBI had maintained two separate files on the appellant. One was compiled as a background investigation in connection with the appellant's application for employment with the FBI in 1934. The other was compiled in connection with an investigation of the appellant's "activities in support of racial equality and possible Communist causes" from 1945 to 1961.

In withholding other portions of the documents, the FBI relied on subparagraphs (C), (D) and (E) of § 552(b)(7). As amended, these subparagraphs provide that investigatory records compiled for law enforcement purposes may be withheld if the production of such records would

"(C) constitute an unwarranted invasion of personal privacy, (D) disclose the identity of a confidential source and, in the case of a record compiled by a criminal law enforcement authority in the course of a criminal investigation, or by an agency conducting a lawful national security intelligence investigation, confidential information furnished only by the confidential source, (E) disclose investigative techniques and procedures . . .."

According to Senator Hart, who introduced the amended version of Exemption 7 on the Senate floor, the purpose of subparagraph (C) is to "protect the privacy of any person who is mentioned in the requested files, and not only the person who is the object of the investigation." *Freedom of Information Act and Amendments of 1974 (P.L. 93–502) Source Book, Legislative History, Texts and Other Documents,* Joint Committee Print, 94th Cong., 1st Sess. 334 (hereinafter cited as Sourcebook). Similarly, the purpose of subparagraph (D) is to protect

"the identity of a person other than a paid informer . . . if the person provided information under an express assurance of confidentiality or in circumstances from which such an assurance could reasonably be inferred. Under this category, in every case where the investigatory records sought were compiled for law enforcement purposes—either civil or criminal in nature—the agency can withhold the names, addresses, and other information that would reveal the identity of a confidential source who furnished the information." Conf.Rep.No. 93–1380, 93d Cong., 2d Sess.; Sourcebook, p. 230.

It is noteworthy that under subparagraph (D) the agency can withhold not only the identity of the source but also the "confidential information" that he supplies. As Senator Hart explained:

"The agency not only can withhold information which would disclose the identity of a confidential source but also can provide blanket protection for any information supplied by a confidential source . . . . *[A]ll the FBI has to do is to state the information was furnished by a confidential source and it is exempt.*" Sourcebook, p. 332 (emphasis added).

It is also significant that courts have construed this provision to apply to commercial institutions and non-federal law enforcement agencies that supply confidential information as well as to individuals. *See Nix v. United States,* 572 F.2d 998, 1005 (4th Cir. 1978); *Church of Scientology of California v. United States,* 410 F.Supp. 1297, 1302–03 (C.D.Cal.1976).

■ Finally, the FBI has invoked § 552a(k)(5) of the Privacy Act in withholding certain documents concerning the appellant's application for employment with the FBI. This provision states:

(k) The head of any agency may promulgate rules . . . to exempt any system of records . . . if the system of records is—

(5) investigatory material compiled solely for the purpose of determining suitability, eligibility, or qualifications for Federal civilian employment, . . . but only to the extent that the disclosure of such material would reveal the identity of a source who furnished information to the Government under an express promise that the identity of the source would be held in confidence, or, prior to the effective date of this section, under an implied promise that the identity of the source would be held in confidence; . . .."

Although the Freedom of Information Act does not contain a comparable exemption, we agree with the lower court that the two statutes must be read together, and that the Freedom of Information Act cannot compel the disclosure of information that the Privacy Act clearly contemplates to be exempt.

## II.

As was noted earlier, while the FOIA provides for *in camera* inspections, "it is clear from the legislative history that this section merely 'permit[s] such *in camera* inspection at the discretion of the Court.'" *Weissman v. Central Intelligence Agency,* 184 U.S.App.D.C. 117, 121, 565 F.2d 692, 696 (1977). Thus, in determining whether the district court erred in refusing to conduct an *in camera* inspection, the key issue is whether the agency has provided a sufficient description of the contested information to establish that it logically falls within the category of the claimed exemption. *See Ray v. Turner,* 190 U.S.App.D.C. 290, 298, 587 F.2d 1187, 1195, n. 22 (1978).

█ From our review of the record, we are satisfied that the FBI has dealt with the instant FOIA request in a responsible and conscientious manner. As the lower court stated in its memorandum opinion, the agency has furnished affidavits which contain

"lengthy, detailed descriptions of all documents released, the nature of portions excised, the statutory source of the exemptions claimed, the reason the exemptions were claimed, and the standards used in applying the exemptions to individual document portions. In addition, the affidavit contains a document-by-document index in which each document is described, deleted portions are outlined as to quantity and general character, the statutory exemption claimed for each portion is noted, and the paragraph in the body of the affidavit which explains the application of the particular exemption to particular kinds of materials is cross-referenced. Further, filed simultaneously with the affidavits were copies of each document released to plaintiff, both in their entirety or with deletions which

are clearly visible and from which it can readily be ascertained whether or not such portions are likely to contain the kinds of information the FBI claims they do."

Thus, for example, the index discloses that the agency withheld a part of Document 8[2] on the grounds that the information was currently and properly classified under Executive Order 11652 in the interest of national defense or foreign policy. § 552(b)(1). The affidavit of Special Agent James stated that the information contained in Document 8 "would reveal an intelligence source and reveal the FBI's interest in a foreign relations matter, the continuing protection of which is essential to the national security." The affidavit also stated that the document "was presented to the Departmental Review Committee for classification review on February 1, 1977, and the classification was upheld as to those portions described." We find this description sufficient to establish that the contested information falls within the § 552(b)(1) exemption, particularly since there is nothing in the record to raise the issue of good faith.[3]

█ By the same token, we find that the agency affidavits have generally provided adequate information to establish that specific and identifiable portions of the challenged documents fall within § 552(b)(2) or §§ 552(b)(7)(C), (D) and (E) of the FOIA, and that other portions fall within § 552a(k)(5) of the Privacy Act. However, we have discovered at least three instances in which the agency has withheld entire pages of investigative reports on the grounds that the pages would disclose the names of investigating agents or the identities of confidential sources.[4] In each of these cases, it is not apparent from the agency's affidavits why the pages cannot be

---

2. The document is described as an investigative report from the Special Agent in Charge, Chicago, to FBI headquarters, Washington, D.C., dated April 3, 1950.

3. In this connection, we are mindful that a reviewing court should "accord substantial weight to an agency's affidavit concerning the

details of the classified status of the disputed record." S.Rep. 93–1200, 93d Cong., 2d Sess. 12 (1974), U.S.Code Cong. & Admin.News 1974, p. 6290.

4. Specifically, Documents 11 (p. 6), 13 (p. 2) and 31 (administrative pages 1–4).

released after the identifying data has been deleted. Accordingly, these pages are appropriately subject to an *in camera* review by the district court.

We note also that on numerous occasions the agency has relied on § 552(b)(7)(D) in withholding the so-called "symbol numbers" of confidential sources. It is not clear to us, however, precisely why these "symbol numbers" represent identifying data. On remand, therefore, the agency should be given an opportunity to explain the ways in which the "symbol numbers" could reveal the identity of a confidential informant.

Accordingly, the case is remanded for the limited purposes set forth above. In all other respects the opinion of the district court is affirmed.