**Judith R. PORTER et al.,**

v.

**UNITED STATES DEPARTMENT OF JUSTICE.**

Civ. A. No. 82–2668.

United States District Court, E.D. Pennsylvania.

Nov. 29, 1982.

H. Robert Fiebach, Brian P. Flaherty, Philadelphia, Pa., for plaintiffs.

Joseph M. Masiuk, Philadelphia, Pa., for defendant.

## MEMORANDUM OPINION AND ORDER

WEINER, District Judge.

This case presents the difficult question of whether documents should be released under the Freedom of Information Act, 5 U.S.C. § 552 (FOIA). The plaintiffs assert that information pertaining to them should be disclosed pursuant to the FOIA. The defendant asserts that the documents sought are exempt from disclosure pursuant to the Privacy Act, 5 U.S.C. § 552a (PA), considered independently or in conjunction with Exemption 3 of the FOIA, 5 U.S.C. § 552(b)(3), and pursuant to the national security exemption, 5 U.S.C. § 552(b)(1). Presently before the court is the motion of the defendant to dismiss, or in the alternative, for summary judgment. For the reasons which follow, the motion for summary judgment is granted.

The plaintiffs, Gerald and Judith Porter, learned sometime before March 18, 1981 that the Federal Bureau of Investigation (FBI) had a dossier on one or both of them. On March 18, 1981, they filed a request pursuant to the FOIA, requesting that a search of the records of the FBI be made for material pertaining to either or both of them and that such existing material be released to them. A search was made and the FBI determined that a file on plaintiff Judith did exist. The FBI also found cross-references to plaintiff Gerald. On June 18, 1981, the FOIA request was rejected at the agency level. After an appeal was denied, plaintiffs instituted this suit seeking release of the information. The plaintiffs claim that the exemption under the PA and the national security exemption are inapplicable. They further argue that the defendant should be estopped from arguing any exemption other than the one relating to national security, since this was the only exemption claimed at the administrative and appellate levels.

This court held an *in camera* inspection to determine whether or not the classification asserted by defendant in its claims for exemption status under the PA was justified. We determined that the classification was justified. Therefore, the factual matters having been resolved, we turn to the legal issues presented.

There are compelling competing interests involved in the legal issues. The FOIA, itself, was designed to give United States citizens access to information pertaining to those citizens gathered by the Government. The exemptions provided under the FOIA were designed with the realization that the Government has competing interests in enforcing the law and protecting national security which preclude the disclosure of that information.

Exemption 3 of the FOIA, 5 U.S.C. § 552(b)(3), exempts from release matters that are specifically exempted from disclosure by certain statutes other than the FOIA. Generally speaking, a statute may serve as a basis for withholding under Exemption 3 if it is of the following character:

> ... the product of congressional appreciation of the dangers inherent in airing particular data and incorporates a formula whereby the administrator may determine precisely whether disclosure in any instance would pose the hazard that Congress foresaw.

*American Jewish Congress v. Kreps,* 574 F.2d 624, 628–9 (D.C.Cir.1978).

A growing number of courts have held that the exemptions of PA constitute either an independent withholding statute or a statute qualifying for withholding under Exemption 3 of the FOIA. *Terkel v. Kelly,* 599 F.2d 214 (7th Cir.1979), *cert. denied,* 444 U.S. 1013, 100 S.Ct. 662, 62 L.Ed.2d 642 (1980); *Painter v. FBI,* 615 F.2d 689 (5th Cir.1980); *Heinzl v. Immigration and Naturalization Service,* No. C 80–1210 SAW (N.D.Cal. Dec. 18, 1981).

In *Terkel, supra,* the Court of Appeals for the Seventh Circuit affirmed the FBI's withholding of certain materials pursuant to Exemption (k)(5) of the PA, 5 U.S.C. § 552a(k)(5), by stating the following:

Although the Freedom of Information Act does not contain a comparable exemption, we agree with the lower court that the two statutes must be read together, and that the Freedom of Information Act cannot compel the disclosure of information that the Privacy Act clearly contemplates to be exempt.

599 F.2d at 216. Subsequently, in *Painter, supra,* the Court of Appeals for the Fifth Circuit held that the exemption provisions of the PA constituted a withholding statute under Exemption 3 of the FOIA. In reaching this conclusion, the court noted that, "subsequent to enactment of the FOIA, Congress passed two other open records acts," *i.e.,* the PA and the Government in the Sunshine Act, 5 U.S.C. § 552b; that both of these statutes "overlapped in places" with the FOIA; and that Congress had demonstrated its awareness of this fact by including provisions in both the new statutes that "specifically indicated when the exemptions of one act should not apply to disclosures mandated by another." 615 F.2d at 690-1 (referring, *inter alia,* to 5 U.S.C. § 552a(q)). Relying on Congress' awareness of "the interplay between these various open record acts, "the court declined "inferentially to limit the scope of 5 U.S.C. § 552(b)(3) where Congress has not specifically indicated an intent to do so." *Id.* at 691.

A different approach was used in *Greentree v. U.S. Customs Service,* 674 F.2d 74 (D.C.Cir.1982), a case which plaintiffs cite for the proposition that the PA is not a withholding statute within the contemplation of Exemption 3 of the FOIA. In *Greentree,* the Court of Appeals for the District of Columbia circuit sought to reverse the trend of *Terkel, Painter* and *Heinzl.* However, the court's reasoning in *Greentree* is not persuasive for the following reasons.

First, *Greentree* ignores the plain language of 5 U.S.C. § 552a(j) and (k), which expressly authorizes agency heads to exempt certain systems of records from every provision of the PA except a few specifically-listed provisions. One of the provisions

that the language of 5 U.S.C. § 552a(j) and (k) expressly makes "waivable" is the access provision of the PA, 5 U.S.C. § 552a(d)(1). By holding that Exemption (j)(2) is not a withholding statute under FOIA Exemption 3, *Greentree* effectively rewrites 5 U.S.C. § 552a(j) and (k) and nullifies Congress' decision to permit certain systems of records to be exempted from first party access.

Second, *Greentree* ignores language in the legislative history of the PA which states that "it would not be proper for individuals to see their own intelligence or investigative files." [1974] U.S.Code Cong. & Admin.News, 6916, 6938 (S.Rep. No. 93–1183 (93rd Cong., 2d sess.)). It also fails to give due consideration to the fact that, in considering the bills that became the PA, Congress expressly rejected language that would have prohibited agencies from "withholding ... any personal information which is required to be disclosed by law or any regulation thereunder." *Greentree, supra,* 674 F.2d at 81 (quoting Sec. 205(b) of the Senate's final privacy bill).

█ A final reason that *Greentree* is unpersuasive is its conclusion that one of the provisions of the PA, 5 U.S.C. § 552a(b)(2), "represents a Congressional mandate that the Privacy Act *not* be used as a barrier to FOIA access." *Greentree, supra,* 674 F.2d at 79. However, 5 U.S.C. § 552a(b)(2) provides only that material pertaining to an individual cannot be withheld from a third person if the FOIA requires its release to him. Manifestly, 5 U.S.C. § 552a(b)(2) has nothing to do with requests by individuals for their own records. Those requests, as indicated above, are controlled by such other provisions of the PA as 5 U.S.C. § 552a(d)(1), (j), (k) and (g).

█ In view of the foregoing, this court is influenced by *Terkel, Painter,* and *Heinzl.* The exemptions of the PA constitute either an independent withholding statute or a statute qualifying for withholding under Exemption 3 of the FOIA. As a result, plaintiffs are deprived under the PA of access to the documents they seek. This court has previously determined that the documents were properly classified under the PA in the *in camera* investigation.

■ Turning now to the exemption claimed relating to national security, this court notes that Exemption (b)(1) of the FOIA is intended to prevent disclosure of documents authorized by Executive Order (EO) to be kept classified in the interest of national defense or foreign policy. Under this exemption, a twofold test must be met. First, the documents must be specifically authorized under criteria established by an EO to be kept classified; and, second, the documents must, in fact, be properly classified.

Congress provided that all determinations as to the applicability of the exemptions be made de novo by reviewing courts. 5 U.S.C. § 552(a)(4)(B). Congress also provided that the exemption relating to FOIA accords the Executive Branch broad powers to protect material, as demonstrated by the following:

> However, the conferees recognize that the Executive departments responsible for national defense and foreign policy matters have unique insights into what adverse effects might occur as a result of public disclosure of a particular classified record. Accordingly, the conferees expect that Federal courts, in making de novo determinations in Section 552(b)(1) cases under Freedom Of Information Act, will accord substantial weight to an agency's affidavit concerning the details of the classified status of the disputed record.

S.Rep. 93–1200, 93d Cong., 2d sess. 12 (1974), U.S.Code Cong. & Admin.News, 1974, pp. 6267, 6290. *See, Weissman v. CIA*, 565 F.2d 692, at 697, n. 10 (D.C.Cir. 1977); *Ray v. Turner*, 587 F.2d 1187, at 1193, 1194 (D.C.Cir.1978).

Therefore, in the de novo determinations by the courts, once it is established that the particular records are specifically authorized to be kept secret by EO, and that those records are, in fact, properly classified pursuant to an EO, those records are exempt from the mandatory disclosure provisions of the FOIA. The issue presented is not whether the court would have classified the particular records as "secret" or "confidential" in the first instance, but rather, whether the appropriate Executive officials applied the proper procedural and substantive criteria of the EO in arriving at the decision to classify the particular records.

■ In the case *sub judice,* the detailed affidavit of FBI Special Agent Peterson shows clearly that each document was set forth in the appropriate EO 12356 and according to the Department of Justice regulations; the documents were marked and stamped with the proper markings and were properly processed. These classifications were also assigned by the appropriate classification officers, experts in intelligence matters, upon a determination that these documents must be protected in the interest of national defense or foreign policy.

Turning to the second requirement of whether the documents were, in fact, properly classified, we first examine EO 12356 which exempts information only if it pertains, *inter alia,* to intelligence activities, sources, or methods (§ 1.3(a)(4)), or foreign relations or foreign activities of the United States (§ 1.3(a)(5)). If information falls within one of these categories, it may be classified when an original classification authority further determines that its unauthorized disclosure reasonably could be expected to cause damage to the national security (§ 1.3(b)).

In the case *sub judice,* this court supports the assignment of classifications by the FBI and the determination relating to national security by the FBI. The records were determined to fall into the above two categories of classifiable information: intelligence activities, sources or methods; and foreign relations or foreign activities of the United States (Peterson declaration, p. 5, para. 5).

Specifically, information pertaining to intelligence activities, sources or methods encompassed such matters as the following:

> Information that could reveal or identify a present, past or prospective intelligence source, whether a person, organization, group, technical system, mechanism or device that provides, has provided or is

being developed to provide foreign intelligence or foreign counterintelligence.

Information which could reveal or identify a present, past or prospective intelligence method, procedure, mode, technique or requirement used or being developed to acquire, transmit, analyze, correlate, evaluate or process foreign intelligence or foreign counterintelligence, or to support an intelligence source, operation or activity.

Information that could reveal, jeopardize or compromise a technical or mechanical device, procedure or system used or proposed for the collection of intelligence information, or the sites, facilities equipment, systems operational schedules and technologies used or proposed for use in such collection or in the interpretation, evaluation and dissemination of collected information.

(Peterson declaration, Appendix A, p. E).

This information could also reasonably be expected to cause damage to the national security. In essence, disclosure could reveal the existence and extent of certain intelligence or counterintelligence operations and details of their nature, objectives and scope, and could identify both intelligence sources and data used in the acquisition and processing of intelligence and counterintelligence information. This knowledge could enable hostile entities to assess general and specific intelligence collection capabilities and to take appropriate countermeasures, as well as would make ongoing and future intelligence operations more difficult. (Peterson declaration, Appendix A, p. G, H).

The information pertaining to foreign relations or foreign activities of the United States was also properly classified (Peterson declaration, p. 5, paragraph 5). Knowledge of this information could enable hostile entities to devise counterintelligence measures against United States' intelligence gathering activities, as well as compromise foreign sources and endanger United States' citizens in foreign countries (Peterson declaration, Appendix A, pp. 4–7). Ultimately, the unauthorized disclosure of this information could lead to diplomatic, economic and military retaliation against the United States. In light of these factors, this court finds that the records sought to be examined by plaintiffs are exempt from the mandatory disclosure provisions of the FOIA.

■ Finally, we address the issue of whether defendant is estopped from raising grounds for exemption other than those previously raised at the administrative and appellate levels.

In *Jordan v. Department of Justice,* 591 F.2d 753 (D.C.Cir.1978), the court considered the issue of when the government could appropriately claim an exemption for the first time, and concluded that an exemption must be claimed at least by the time of the district court proceeding. The court reasoned as follows:

> It is basic that the FOIA establishes a statutory presumption that all federal records are available to "any person." This presumption is rebutted only by evidence presented by an agency that the item sought is exempt from disclosure under one of the nine enumerated exemptions. The agency bears the full burden of proof when an exemption is claimed to apply. To meet this burden the agency must identify the *specific statutory exemption* relied upon and demonstrate that the exemption applies to the documents in question. This showing must be made *at the district court level.* An agency cannot prevail on an exemption that it has not raised either at the agency level or in the district court and that it has invoked for the first time in the appellate court.

(591 F.2d at 779). *See, Ryan v. Dept. of Justice,* 617 F.2d 781, 792 (D.C.Cir.1980).

This court supports such reasoning and therefore, finds that defendant has not waived its right to claim the exemptions of 5 U.S.C. § 552a(j)(2) and 5 U.S.C. § 552(b)(3), in addition to the previously raised claim of exemption 5 U.S.C. § 552(b)(1), since it claimed the former exemptions at the federal district court level.