Hayden Leigh SILETS, Plaintiff,

v.

**FEDERAL BUREAU OF INVESTIGA-TION, Defendant.**

No. 84 C 353.

United States District Court, N.D. Illinois, E.D.

July 25, 1984.

David A. Ward, Silets & Martin, Ltd., Chicago, Ill., for plaintiff.

Dan K. Webb, U.S. Atty. by Michael S. O'Connell, Asst. U.S. Atty., Chicago, Ill., for defendant.

## MEMORANDUM ORDER

BUA, District Judge.

Hayden Leigh Silets seeks, pursuant to 28 U.S.C. § 636 and Rule 2.44(B) of the Local Rules for the Northern District of Illinois, review of various orders entered by Magistrate Balog on March 28, 1984. For the reasons stated below, the magistrate's orders are adopted in part and rejected in part.

## I. FACTS

On January 18, 1984, Hayden Leigh Silets filed this action against the Federal Bureau of Investigation ("FBI") under the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA"). The Complaint alleges that on April 15, 1983, Silets requested access to "any and all investigation files involving the case of *United States v. James Hoffa*, United States District Court, Chattanooga, Tennessee, Docket No. 15876." Complaint, ¶ 5. On May 3, 1983, the FBI responded that it possessed over 34,000 pages of documents responsive to Silets' April 15 request. Silets then narrowed his request to " 'records pertaining to any electronic surveillance of Mr. Hoffa' in connection with the investigation leading up to *United States v. Hoffa*, [349 F.2d 20]." Complaint, ¶ 6. On June 16, 1983, the FBI responded that its search of FBI headquarters, the Detroit field office and the Memphis field office revealed "no record of an electronic surveillance of Mr. Hoffa...." Schweickhardt affidavit, filed March 22, 1984, at Exhibit D.

On September 8, 1983, Silets again redefined his request to include any electronic surveillance indices containing any "FBI 'overhears' or 'intercepts' of conversations by or referring to James Hoffa...." Complaint, Exhibit 3, p. 1. On November 4, 1983, the FBI responded to Silets' September 8 request by releasing 15 pages of documents while invoking certain FOIA exemptions. Additionally, the FBI produced index cards concerning electronic "overhears" or "intercepts" of James Hoffa.

After receiving the index cards, Silets, on November 10, 1983, requested production of the transcripts or tapes listed in the various index cards. In partial response, the FBI released 250 pages of documents to Silets on February 9, 1984. The FBI, however, deleted certain information based on national security grounds, internal rules and practice of the FBI, interference with law enforcement proceedings and invasion

of privacy. Thirteen pages were withheld in their entirety.

After exhausting his administrative appeals within the agency, Silets filed suit in this Court on January 16, 1984. Also on January 16, Silets filed a motion requesting an expedited response and production of documents by the FBI. On February 21, 1984, Silets filed a renewed motion for expedited production of documents and for an *in camera* review of information withheld by the FBI. That motion, by order of the Executive Committee dated February 21, 1984, was referred to Magistrate Balog.

## II. PROCEEDINGS BEFORE THE MAGISTRATE

On March 1, 1984, Magistrate Balog granted Silets' motion for an expedited production of documents and ordered the FBI to produce the documents by March 22, 1984. On March 20, 1984, the FBI filed a motion for partial summary judgment relating to the exemptions claimed in the 250-page February 9 disclosure. Additionally, the FBI filed a motion for a stay of Magistrate's March 1 order concerning the requested documents not disclosed. On March 26, 1984, Silets filed a motion for sanctions against the FBI alleging that the FBI had acted arbitrarily and capriciously by withholding documents responsive to Silets' November 10, 1983 request.

On March 28, 1984, the magistrate issued essentially three orders which are the subject of this appeal. First, the magistrate denied Silets' motion for an *in camera* review of the 250 expurgated documents released by the FBI on February 9, 1984. The magistrate reasoned that the affidavits submitted by the FBI are "comprehensive and sufficiently detailed to meet the government's legal and factual standard of establishing that the documents ... are clearly exempt from disclosure...." Transcript of proceedings before the Honorable James T. Balog, March 28, 1984, at 2–3. In essence, the magistrate granted the FBI's motion for partial summary judgment.[1] Second, the magistrate granted the FBI's motion to stay the March 1 Order. Silets' motion for an expedited production of documents, previously granted on March 1, was therefore denied. Third, the magistrate denied Silets' motion for sanctions and costs against the FBI. Silets appeals all of the March 28, 1984 orders.

## III. DISCUSSION

### A. *Silets' Motion for an In Camera Review and The FBI's Motion for Partial Summary Judgment*

On February 9, 1984, the FBI released 250 expurgated pages of documents responsive to Silets' September 8 and November 10, 1983 requests. Silets had requested transcripts or logs containing "references to FBI 'overhears' or 'intercepts' of conversations by or referring to James Hoffa...." The FBI, however, deleted significant portions of virtually all the documents pursuant to four categories of exemptions under the FOIA. The FBI deleted information pursuant to: (1) FOIA Exemption (b)(1)[2] on national security grounds; (2) FOIA Exemption (b)(2)[3] as materials relating solely to the internal rules and practices of the FBI; (3) FOIA Exemption (b)(7)(A)[4] as investigatory records which disclosure would interfere with law enforcement proceedings; and (4) FOIA Ex-

---

**1.** It is unclear whether the magistrate intended to rule upon the FBI's motion for partial summary judgment on March 28, 1984. Both parties, however, agree that the motion for partial summary judgment is properly before the Court on this appeal of the magistrate's ruling.

**2.** Section 552(b)(1), 5 U.S.C., exempts material: (1)(A) specifically authorized under criteria established by an Executive Order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified pursuant to such Executive Order ....

**3.** Section 552(b)(2), 5 U.S.C., exempts material: (2) related solely to the internal personnel rules and practices of an agency ....

**4.** Section 552(b)(7)(A), 5 U.S.C., exempts: (7) investigatory records compiled for law enforcement purposes, but only to the extent that the production of such records would (A) interfere with enforcement proceedings ....

494

emption (b)(7)(C)[5] as investigatory records which disclosure would constitute an unwarranted invasion of privacy.[6] In addition, the FBI submits the affidavits of FBI Agents Martell, Davis and Schweickhardt in support of its motion for partial summary judgment. The FBI argues that, based upon these affidavits, an *in camera* review of the documents is unnecessary.

■ The FOIA was enacted with "the express intent of opening up the workings of government to public scrutiny." *Stein v. Department of Justice*, 662 F.2d 1245, 1252 (7th Cir.1981). After exhausting applicable administrative remedies, a requester suffering an adverse administrative decision may have the controversy determined *de novo* in the district court. *Id.*

■ Where an agency claims exemptions under the FOIA, the district court may examine the withheld information *in camera* to determine whether the government has sustained its burden of establishing an exemption. *Id.* Before an *in camera* submission is ordered, however, the government "should be given the opportunity to establish by means of testimony or detailed affidavits that the documents are clearly exempt from disclosure." *Id.* (*quoting* S.Rep. No. 93–1200, 93d Cong., 2d Sess. (1974 Conference Comm.Report), U.S.Code Cong. & Admin.News, 1974, 6267, 6287). The government can discharge its burden of establishing FOIA exemptions by submission of affidavits that:

(1) describe the withheld documents and the justifications for nondisclosure with reasonably specific detail,

(2) demonstrate that the information withheld falls logically within the claimed exemption, and (3) are not controverted by either contrary evidence in the record or by evidence of agency bad faith.

*Id.* at 1253. Only if the government sustains its burden as to these elements can

summary judgment be entered without an *in camera* review of the documents. *Id.* "In light of the policy favoring disclosure, [FOIA] exemptions are to be narrowly construed." *Miller v. Bell*, 661 F.2d 623, 626 (7th Cir.1981).

### 1. Section (b)(1) National Security Exemption

Section 552(b)(1), 5 U.S.C., exempts matters that are "(A) specifically authorized under criteria established by an Executive Order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified pursuant to such Executive Order." *Id.* In order to evaluate whether the FBI's claim of exemption under (b)(1) is proper, the Court must determine whether the documents were properly classified pursuant to the procedural and substantive requirements of Executive Order 12356, 47 Fed.Reg. 14874, 15557 (1982). *See Stein v. Department of Justice*, 662 F.2d 1245, 1256–57 (7th Cir. 1981).

The procedural requirements of E.O. 12356 are as follows:

(a) At the time of original classification, the following information shall be shown on the face of all classified documents, or clearly associated with other forms of classified information in a manner appropriate to the medium involved, unless this information itself would reveal a confidential source or relationship not otherwise evident in the document or information:

(1) one of the three classification levels defined in Section 1.1 [Top Secret, Secret, or Confidential];

(2) the identity of the original classification authority if other than the person whose name appears as the approving or signing official;

---

**5.** Section 552(b)(7)(C), 5 U.S.C., exempts:
(7) investigatory records compiled for law enforcement purposes, but only to the extent that the production of such records would ... (C) constitute an unwarranted invasion of personal privacy ....

**6.** Silets does not object to the FBI's (b)(2) exemption in his February 16, 1984 motion. Thus, only the use of exemptions (b)(1), (b)(7)(A) and (b)(7)(C) are at issue.

(3) the agency and office of origin; and

(4) the date or event for declassification, or the notation "Originating Agency's Determination Required."

E.O. 12356, § 1.5, 47 Fed.Reg. 14874, 14877 (1982). In addition, classified documents must be reviewed by the agency for possible declassification if the documents are responsive to a FOIA request. *Id.* at § 3.4(f), 47 Fed.Reg. at 14880.

The 11 pages of surveillance logs withheld essentially in their entirety [7] under the (b)(1) Exemption were produced from the Chicago, Washington, D.C., New York, San Francisco and Los Angeles field offices of the FBI. In support of the (b)(1) Exemption, the FBI submits the affidavit of Special Agent Sherry L. Davis. The Davis affidavit establishes that she possesses "Top Secret" classification authority, delegated by the Attorney General of the United States, pursuant to E.O. 12356, §§ 1.2 and 3.1. Davis states that after personally examining the 11 documents sought by Silets, she has determined that the documents are properly classified as "intelligence activities (including special activities), or intelligence source or methods." Davis affidavit, ¶ 5 (*quoting* E.O. 12356, § 1.3(a)(4)).

 From the 11 expurgated documents released, it appears that all of the procedural requirements of E.O. 12356 have been satisfied. For example, the five expurgated documents released by the San Francisco field office all: (1) are marked "secret" as required by E.O. 12356, § 1.5(a)(1); (2) indicate the original classification authority as required by § 1.5(a)(2); (3) identify the agency and office of origin as required by § 1.5(a)(3); (4) are marked with the notation "Originating Agency's Determination Required" as required by § 1.5(a)(4). Finally, the Davis affidavit establishes that all of the documents were reviewed for declassification following Silets' FOIA request as required by E.O. 12356, § 3.4(f). The procedure require-

ments of E.O. 12356, therefore, have been satisfied.

Whether the substantive requirements of E.O. 12356 have been met presents a much closer question. The Executive Order provides that "intelligence activities (including special activities), or intelligence sources or methods" shall be considered for classification. E.O. 12356 at § 1.3(a)(4); 47 Fed. Reg. at 14876. Furthermore, disclosure of intelligence sources or methods is "presumed to cause damage to the national security." *Id.* at § 1.3(c); 47 Fed.Reg. at 14876.

In claiming (b)(1) Exemption for the 11 pages of surveillance logs, the FBI relies entirely upon the § 1.3(a)(4) "intelligence sources, activities or methods" classification category. Silets responds by arguing that the FBI's "canned affidavits" should be given little weight and therefore necessitate an *in camera* review by this Court.

Silets' characterization of the FBI's affidavits is not entirely incorrect. In her affidavit, Agent Davis claims that the 11 documents are exempt in their entirely for three reasons: First, that portions of the documents contain "[i]ntelligence source singular identifier(s) and personnel" (hereinafter "personnel exemption"). Second, that portions of the documents contain "[a]ctivity and/or method information that would reveal a portion of the scope and thrust of a particular intelligence gathering operation" (hereinafter "activity and/or method exemption"). Third, that portions of the documents contain the "[d]ate and/or place of a specific activity about which an intelligence source reported" (hereinafter "date and/or place exemption"). Davis further explains that, in her judgment, to reveal any portion of the 11 documents "could result in damage to the national security." Davis' affidavit, ¶ 5.

 While the 11 documents may indeed be classified properly under E.O. 12356, the FBI has simply not sustained its burden of describing the documents with "reasonable specificity" and demonstrating that the in-

---

**7.** *See, e.g.,* Appendix A.

formation withheld "falls logically within the claimed exemption." *See Stein v. Department of Justice,* 662 F.2d 1245, 1253 (7th Cir.1981). Although the FBI's expurgation of "personnel" and "date and/or place" information appears limited to information which logically would fall within those categories, the expurgation of virtually entire documents under the "activity and/or method" exemption is without sufficient explanation. The substance of all 11 surveillance logs is entirely expunged as information containing "[a]ctivity and/or method information that would reveal a portion of the scope and thrust of a particular intelligence gathering operation." [8] According to Agent Davis, this description applies to all documents produced from at least four different FBI field offices and which presumably involves several different investigations. The "stock" description simply does not demonstrate that the withheld information logically falls within a FOIA exemption.

While the Court is mindful that "as much of a public record as possible" should be established (*Stein v. Department of Justice,* 662 F.2d 1245, 1256 (7th Cir.1981)), in light of the Agent Davis' assertion that nothing more can be released without endangering national security, it is apparent that *in camera* submission to the magistrate of the 11 documents is required. In addition, the FBI should submit an affidavit, *in camera,* which explains how the 11 documents are exempt from disclosure as classified documents pursuant to E.O. 12356, § 1.3(a)(4). *See Stein,* 662 F.2d at 1254. The affidavits should demonstrate how the release of documents over 20 years old continues to present a danger to the national security. Since only 11 classified documents are at issue, an *in camera*

inspection would not unduly burden the Court.[9]

### 2. *Section (b)(7) Investigatory Records Exemptions*

 Section 552(b)(7), 5 U.S.C., provides, in part, that the following matters are exempt from disclosure under the FOIA:

(7) investigatory records compiled for law enforcement purposes, but only to the extent that the production of such records would (A) interfere with enforcement proceedings... [or] (C) constitute an unwarranted invasion of personal privacy.

In order for the government to successfully invoke the (b)(7) exemption, a three-part test must be met. In order to be exempt, the material:

(1) must be an "investigatory record," (2) must have been "compiled for law enforcement purposes," and (3) must satisfy the requirements of one of the six subparts of Exemption 7.

*Pratt v. Webster,* 673 F.2d 408, 413 (D.C. Cir.1982) (footnote omitted). The government bears the initial burden of providing a "detailed analysis" of the requested material and the "reasons for invoking an exemption." *Antonelli v. FBI,* 721 F.2d 615, 617 (7th Cir.1983). *See also Stein v. Department of Justice,* 662 F.2d 1245, 1253 (7th Cir.1981). Once the government meets this initial burden, the court must "balance the agency's justification against the public interest in disclosure." *Antonelli,* 721 F.2d at 617.

The vast majority of information withheld by the FBI in this case is claimed exempt under Section (b)(7)(C) as investigatory records which disclosure would constitute an unwarranted invasion of personal privacy. Silets argues that Exemption

---

8. *See, e.g.,* Appendix A.

9. The FBI argues that "an *in camera* review is the exception rather than the rule and courts are to use this method in a FOIA case with extreme restraint." Defendant's Memorandum In Support of Partial Summary Judgment, filed Mar. 22, 1984, at 6. The *in camera* inspection, however, is not an uncommon method for dis-

trict courts to utilize in this district. *See, e.g., King v. IRS,* 684 F.2d 517 (7th Cir.1982); *Stein v. Department of Justice,* 662 F.2d 1245 (7th Cir.1981); *Terkel v. Kelly,* 599 F.2d 214 (7th Cir.1979); *Kanter v. IRS,* 433 F.Supp. 812 (N.D. Ill.1977). Clearly, conducting an *in camera* inspection is within the trial court's discretion. *E.g., Terkel,* 599 F.2d at 217.

(b)(7) is inapplicable because the requested documents were not the result of a lawful investigation, but rather were gathered through illegal electronic surveillance. Alternatively, Silets argues that the FBI's "canned affidavits" in support of the (b)(7) Exemptions fail to establish that the information withheld falls logically within the claimed exemption as required by *Stein v. Department of Justice*, 662 F.2d 1245, 1253 (7th Cir.1981).

Silets relies upon *Kanter v. IRS*, 433 F.Supp. 812 (N.D.Ill.1977), and *Weissman v. C.I.A.*, 565 F.2d 692 (D.C.Cir.1977), in support of his argument that documents gathered during the course of illegal electronic surveillance cannot be exempt from disclosure under Exemption (b)(7). *Kanter* and *Weissman* hold that the government may not claim a (b)(7) exemption for materials relating to unauthorized or illegal investigations. The courts reason that information which is the product of an illegal investigation cannot satisfy the threshold "investigatory record compiled for law enforcement purposes" requirement of Exemption (b)(7).

More recently, however, the Court in *Pratt v. Webster*, 673 F.2d 408 (D.C.Cir. 1982), distinguished between an unlawful investigatory *method* and an unlawful investigatory *purpose*. In *Pratt*, the court held that two conditions exist which must be met for a law enforcement agency to pass the Exemption (b)(7) "compiled for law enforcement purposes" threshold requirement. First, "the agency's investigatory activities that give rise to the documents sought must be related to the enforcement of federal laws or to the maintenance of national security." *Id.* at 420. Second, "the nexus between the investigation and one of the agency's law enforcement duties must be based on information sufficient to support at least 'a colorable claim' of its rationality." *Id.* at 421.

██ Silets claims that all of the documents withheld under Exemption (b)(7) are the product of illegal electronic surveillance because they predate the enactment of the Omnibus Crime Control and Safe Streets Acts of 1968, 47 U.S.C. § 605. Silets argues that the illegally obtained documents were necessarily not "compiled for law enforcement purposes" and therefore are not exempt under Exemption (b)(7). Silets' contention, however, fails to distinguish between an alleged illegal investigatory *method* and an illegal investigatory *purpose*. Although Silets persuasively suggests that the *methods* utilized by the FBI were illegal, there is no evidence presented that the investigations "lacked any law enforcement purpose." *Pratt v. Webster*, 673 F.2d 408, 422 (D.C.Cir.1982). Therefore, the fact that the FBI may have illegally wiretapped individuals before 1968 does not, by itself, compel the conclusion that the documents were not "compiled for law enforcement purposes."

██ Although alleged illegal investigatory methods, by themselves, do not destroy exemption under (b)(7), the affidavits submitted by the FBI in support of the (b)(7) Exemptions do not establish that the "information withheld falls logically within" the (b)(7) Exemption. *See Stein v. Department of Justice*, 662 F.2d 1245, 1253 (7th Cir.1981). Neither do the affidavits sustain the government's burden of demonstrating that the investigations were related to the enforcement of federal law and related to the FBI's law enforcement duties as required by *Pratt v. Webster*, 673 F.2d 408 (D.C.Cir.1982).

██ The affidavit of Special Agent D.F. Martell explains that the (b)(7)(C) privacy exemptions are claimed in two situations. First, the notation "(b)(7)(C)/(1)" is made where disclosure of the information would identify FBI personnel. Second, the notation "(b)(7)(C)/(2)" is made where disclosure of the information would identify "individuals who are of investigative interest to the FBI." Martell affidavit, at 6. Having reviewed the approximately 250 expurgated pages of documents disclosed by the FBI on February 9, 1984, the Court finds that the FBI has sustained its burden of demonstrating only that the information withheld under "(b)(7)(C)/(1)" is clearly exempt from disclosure. The information

withheld under "(b)(7)(C)/(1)" is limited to portions of the documents which logically would identify FBI personnel. Since Silets has failed to demonstrate any "significant public interest in disclosing the names of the agents," (*see Stein v. Department of Justice*, 662 F.2d 1245, 1260 (7th Cir.1981)), his motion for an *in camera* review of the "(b)(7)(C)/(1)" information is denied and the FBI's motion for partial summary judgment as to the "(b)(7)(C)/(1)" information is granted.

The information deleted by the FBI under "(b)(7)(C)/(2)," however, includes virtually entire pages of most of the documents, and reveals only express references to James Hoffa or former Attorney General Robert Kennedy.[10] The Martell affidavit fails to demonstrate how the investigations were "related to the enforcement of federal laws" and how they were related to the FBI's law enforcement duties as required by *Pratt v. Webster*, 673 F.2d 408, 420 (D.C.Cir.1982).

▬▬▬ In addition to not satisfying the threshold "proper law enforcement purpose" requirement, even more problematic is the fact that the FBI fails to demonstrate how the disclosure of documents over 20 years old would constitute an unwarranted invasion of third persons' personal privacy. Like the FBI's blanket assertion of (b)(7)(C) Exemption in *Terkel v. Kelly*, 599 F.2d 214, 217 (7th Cir.1979), the affidavits in this case fail to show "why the [expurgated] pages cannot be released after the identifying data has been deleted." *Id.* at 217–18. The mere "mention" of a person in an FBI report, by itself, does not support invocation of the (b)(7)(C) exemption. *Diamond v. FBI*, 707 F.2d 75, 78 (2d Cir.1983). Only the unwarranted invasion of personal privacy constitutes grounds for withholding the identities of third persons. 5 U.S.C. § 552(b)(7)(C). Revealing the identities of deceased persons or persons whom have already disclosed their relationship to the FBI's investigation would *not* constitute an unwarranted invasion of personal privacy under Section (b)(7)(C). *Diamond*,

707 F.2d at 77. In addition, where documents are exceptionally old, it is likely that their age has diminished the privacy interests at stake. *Diamond v. FBI*, 532 F.Supp. 216, 227 (S.D.N.Y.1981), *aff'd*, 707 F.2d 75 (2d Cir.1983).

▬▬▬ In this case, the affidavits do not apprise the Court as to whether the monitored individuals are alive or dead, or have otherwise waived any privacy interest. The three paragraphs of the Martell affidavit, which attempt to justify the "(b)(7)(C)/(2)" exemptions (pages 12 & 13), wholly fail to describe adequately the privacy interests at stake in 250 documents from eight different FBI field offices involving presumably numerous investigations. In their present form, the affidavits are insufficient to sustain the government's burden of demonstrating that the information withheld falls logically within the "(b)(7)(C)/(2)" Exemption. It is appropriate, therefore, to require the FBI to ascertain whether the interviewees' privacy is still at issue. *Diamond v. FBI*, 532 F.Supp. 216, 227 (S.D.N.Y.1981), *aff'd*, 707 F.2d 75 (2d Cir.1983).

Although Special Agent Martell claims that "no reasonably segregable portion of any of the withheld material" can be released, the Court agrees with the FBI's suggestion that it should be given another opportunity to submit sufficiently detailed affidavits which conform to the requirements of *Pratt* and *Stein*. Silets' motion for an *in camera* review and the FBI's motion for partial summary judgment as to the "(b)(7)(C)/(2)" Exemptions therefore are denied without prejudice. The FBI is given 60 days to either file new affidavits or submit the documents to the magistrate for an *in camera* inspection.

The magistrate also ruled that the FBI need not disclose documents responsive to Silets' request which were transferred by the FBI to the U.S. Attorney's Office in Chattanooga, Tennessee before Silets filed his FOIA request. The magistrate reasoned that the FBI has no duty to disclose

---

**10.** *See, e.g.,* Appendix B.

documents no longer within its exclusive possession. In *Kissinger v. Reporters Committee*, 445 U.S. 136, 100 S.Ct. 960, 63 L.Ed.2d 267 (1979), the Court held that an agency's "possession or control is a prerequisite to FOIA disclosure duties ...." *Id.* at 152, 100 S.Ct. at 969. In *Kissinger*, the records had been transferred from the State Department to former Secretary of State Henry Kissinger, who, in turn, donated the documents to the Library of Congress. The Court concluded that since the State Department—the "agency" as defined by 5 U.S.C. § 551(1)—no longer had "possession or control of the documents at the time the [FOIA] requests were received," it had no duty to recover the documents and produce them to the plaintiff. *Id.* at 155, 100 S.Ct. at 971.

██ Silets argues that since the FBI and the U.S. Attorney's Office at Chattanooga are both part of the Department of Justice, the FBI should be required to retrieve the documents and produce them in this case. Silets' argument, however, is not persuasive in light of the FOIA's definition of agency. Section 551(1), 5 U.S.C., defines "agency" as "each authority of the Government of the United States, *whether or not it is within or subject to review by another agency.*" (emphasis supplied). Therefore, § 551(1) contemplates that the FBI may be considered as an "agency" separate from the Department of Justice. Accordingly, since the FBI has relinquished possession of the documents, it is under no duty to disclose them to Silets.[11]

3. *Silets' Motion for Sanctions and for Expedited Production of Documents*

██ The magistrate's decision to deny Silets' motion for sanctions against the FBI is adopted; however, that motion is denied without prejudicing Silets' right to refile a motion for attorneys' fees pursuant to 5 U.S.C. § 552(a)(4)(E) should he

---

11. The magistrate also decided that certain documents which were reviewed by the FBI are outside of Silets' request and therefore need not

---

ultimately prevail in this case. *See Diamond v. FBI*, 532 F.Supp. 216, 234 (S.D.N.Y.1981), *aff'd.*, 707 F.2d 75 (2d Cir.1983). Additionally, the magistrate's refusal to issue findings that the FBI has acted arbitrarily or capriciously pursuant to 5 U.S.C. § 552(a)(4)(F) is correct and hereby adopted. Finally, the magistrate's decision to deny Silets' motion for an expedited production of documents is adopted. This Court agrees with the magistrate that "exceptional circumstances" exist in this case and that the FBI is "exercising due diligence" in responding to Silets' request. *See* 5 U.S.C. § 552(a)(6)(C).

IV. CONCLUSION

The orders entered by Magistrate Balog on March 28, 1984, are adopted in part and rejected in part. Silets' motion for an *in camera* review of 11 documents withheld by the FBI under Exemption (b)(1) is granted. Silets' motion for an *in camera* review of documents withheld under Exemption (b)(7) is denied without prejudicing Silets' right to refile that motion should the FBI fail to submit new affidavits within 60 days. The FBI's motion for partial summary judgment is granted as to: (1) materials withheld under FOIA Exemption (b)(2); (2) materials withheld under FOIA Exemption "(b)(7)(C)/(1)"; (3) materials withheld that are in the possession of the U.S. Attorney's Office; and (4) materials withheld that are outside the scope of Silets' request. The FBI's motion for partial summary judgment is denied as to the remaining information withheld on February 9, 1984, without prejudicing the FBI's right to refile that motion with new affidavits within 60 days. Finally, Silets' motion for sanctions is denied without prejudice and Silets' motion for an expedited production of documents is denied.

IT IS SO ORDERED.

---

be disclosed. This Court agrees. *See Diamond v. FBI*, 532 F.Supp. 216, 233 (S.D.N.Y.1981), *aff'd*, 707 F.2d 75 (2d Cir.1983).

## APPENDIX A

APPENDIX B

FD-297 (1-28-57):

62 62/1

| Time | Initial | IC OG | Activity Recorded |
|------|---------|-------|-------------------|
| 10:40A | | | |

Whats his name is trying to embarrass HOFFA, you know,
KENNEDY, so they are taking all this here, instead of
protecting the country against, you know, subversion

| Lo____ Page __2__ | Employee's Name | Date Stamp |
|-------------------|-----------------|------------|
| Day __MON__ Date __5/14/62__ | | |

DOCUMENT NO 9

502

FD-397 (1-26-57)

| Time | Initial | IC OG | Activity Recorded b2 b2/1 |
|------|---------|-------|------------------------------|
| | | | Continued |
| 11:00a | 67c/1 | | |
| 11:13a | | OG | |
| 11:17a | | OG | |
| | 67c/1 | | |
| 11:30a | | IC | |
| 1:33a | | | |
| 1:34a | | | |

7c

| og _____ Page 2 | Employee's Name | Date Stamp |
|-----------------|-----------------|------------|
| by Wed. Date 12/18/63 | 67c/1 | |

DOCUMENT NO 1